[Civ. No. 61776. Second Dist., Div. One. Oct. 28, 1981.]

EVERETT BUCHAN, Plaintiff and Appellant, v.
LAS VIRGENES UNIFIED SCHOOL DISTRICT et al., Defendants
and Respondents.

COUNSEL

Fertman & Golden and Roger N. Golden for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo and James C. Romo for Defendants and Respondents.

OPINION

**DALSIMER, J.**—This is an appeal from a judgment denying a petition for a peremptory writ of mandate[1] to compel respondents, Las Virgenes Unified School District, Las Virgenes Board of Education, and Ken Osborn, superintendent of the district, to reinstate appellant, Everett Buchan, to his previous position of employment with the school district with full salary and benefits retroactive to the date on which appellant was suspended without pay.

---

[1]Appellant's petition was filed under Code of Civil Procedure section 1085.

## FACTS

On April 20, 1978, appellant was a certificated employee of the Las Virgenes Unified School District. He was employed as director of personnel and had held that position in excess of 10 years. On April 20, 1978, the Board of Education of the Las Virgenes School District notified appellant by letter that it had concluded that there was reasonable cause to believe that appellant was suffering "from mental illness of such a degree as to render [appellant] incompetent to perform [his] duties" and that appellant was being suspended with pay pursuant to Education Code section 44942.[2] (All statutory references herein are to Ed. Code, § 44942 unless otherwise noted.) In Buchan's declaration, appellant stated that this letter contained the basis for the board's action. The letter, which is an exhibit to Buchan's declaration, states that it contains an attachment detailing the facts on which the board based its conclusion as required by subdivision (b). The attachment to which this letter refers is not included in the clerk's transcript. We take judicial notice that the attachment to the board's letter is not in the superior court file. (Evid. Code, § 459.)

---

[2]Education Code section 44942 reads as follows: "(a) Any certificated employee may be suspended or transferred to other duties by the governing board if the board has reasonable cause to believe that the employee is suffering from mental illness of such a degree as to render him incompetent to perform his duties.

"(b) The governing board shall forthwith, upon any suspension or transfer hereunder, give to the employee a written statement of the facts giving rise to the board's belief, and an opportunity to appear before the board within 10 days to explain or refute the charges.

"(c) If, after the employee's appearance before the board, the board decides to continue the suspension or transfer, or if the employee chooses not to appear before the board, the employee shall then be offered, in writing, the opportunity of being examined by a panel of three psychiatrists selected by him from a list of psychiatrists to be provided by the board. To assist the panel in making their determination, the governing board shall supply to the panel, prior to the date scheduled for the psychiatric examination, a list of the duties of the position from which the employee was suspended or transferred. The employee shall continue to receive his regular salary and all other benefits of employment during the period dating from his suspension to the filing of the report of the panel with the governing board.

"(d) The psychiatric examination shall be conducted at school district expense within 15 days of any suspension or transfer ordered hereunder. The employee shall submit to the examination, but shall be entitled to be represented by a psychiatrist or physician of his own choice, and any report of the psychiatrist or physician selected by him shall be filed with the panel at the request of the employee.

"A written report of the panel on the examination of the suspended or transferred employee shall be submitted to the governing board within 10 days after completion of the examination. A copy shall be supplied to the employee upon request. The report

Appellant was not given an opportunity to be heard prior to his suspension with pay. The letter informed appellant that he would have an opportunity to appear before the board on May 1, 1978, to explain or refute the charges. On May 1, 1978, appellant appeared before the board. At that time, the board informed appellant that it had decided to

---

shall contain a finding on whether the employee is suffering from mental illness of such a degree as to render him incompetent to perform his duties.

"(e) If a majority of the panel conclude that the employee should be permitted to return to his duties, no written record of the suspension or of the determination of the panel shall be retained, and in all respects any written record concerning the employee shall appear as it did before the suspension was made.

"(f) If a majority of the panel find in their report that the employee is suffering from mental illness of such a degree as to render him incompetent to perform his duties, the governing board may, upon receipt of the report, place the employee on mandatory sick leave of absence. Any mandatory sick leave of absence imposed under this section shall not exceed two years, during which period the employee shall be entitled to sick leave, hospital and medical benefits which he accrued during his employment by the governing board but only to the extent of such accrual.

"(g) Any employee placed on mandatory sick leave of absence pursuant to this section may in writing immediately demand a hearing. Thereupon the governing board shall file a complaint in the superior court of the county in which the school district or the major part thereof is located, setting forth the charges against the employee and asking that the court inquire into the charges and determine whether or not the charges are true, and if true, whether they constitute sufficient grounds for placing the employee on mandatory sick leave of absence, and for a judgment pursuant to its findings.

"(h) If the court finds that the employee was not at the time of the suspension incompetent to perform his assigned duties and should not have been placed on mandatory sick leave of absence, the employee shall be immediately reinstated to the same or a substantially similar position with full back salary, and any written record of the suspension or transfer or any report of the panel shall be destroyed.

"(i) If the court confirms the placing of the employee on mandatory sick leave, or if the employee does not seek a hearing, then upon written request of the employee made not earlier than six months nor later than two years after the date he was placed on mandatory sick leave of absence, a new panel of three psychiatrists shall be convened by, and at the expense of, the governing board to review its original conclusion. If the original conclusion is not changed by the new panel as a result of such review, the employee shall be continued on the mandatory sick leave of absence except that when the employee's total period of absence exceeds two years, the governing board shall either rescind its action and reinstate the employee to the same or a substantially similar position, or shall serve the employee with a notice of intention to dismiss him, and proceed according to Section 44943.

"(j) If a majority of the new panel concludes in its report, or any subsequent review thereof, that the suspended employee or employee on mandatory sick leave of absence should be permitted to return to his duties, or if the court so concludes, the governing board shall take immediate action to restore the employee to the position from which he was suspended or transferred or to a substantially similar position.

"(k) Every hearing and action by or before the governing board pursuant to this section shall be in executive session, and no decision, action, or occurrence therein shall be made public, unless the employee so requests in writing.

"(*l*) Nothing in this section shall be construed to supersede Section 44949."

continue his suspension with pay. When appellant was advised of the board's decision on May 1, 1978, he requested a psychiatric examination pursuant to subdivision (c).

On May 3, 1978, appellant selected three psychiatrists from a list of names given to him by respondents. Appellant was examined by the panel of psychiatrists on May 5, 1978. On May 9, 1978, one of the psychiatrists on the panel orally informed Osborn that the panel was unable to make a finding on appellant's competency to return to his duties without further psychiatric examination. On May 12, 1978, Osborn advised appellant by letter that he was in receipt of the panel's "preliminary comments" and that the panel was unable to certify that appellant was suffering from mental illness "'of such a degree as to render [him] incompetent to perform [his] duties.'" The letter stated that the panel had also advised Osborn that it was unable to certify that appellant should be reinstated to his job.

Osborn's letter ordered appellant to submit to whatever additional psychological testing and psychiatric examination the psychiatrists deemed necessary, and threatened that refusal to participate in the psychological tests and the subsequent psychiatric examination would result in placement of appellant on a leave of absence without pay. Appellant refused to undergo the psychological testing. On October 4, 1978, respondents suspended appellant's sick leave pay. On June 6, 1979, in an attempt to have his sick leave pay restored, appellant agreed to submit to the psychological testing demanded by the board. Respondents agreed that appellant would be placed on "full paid status" on the day that psychological testing commenced. On September 15, 1979, the psychological tests were administered to appellant. During that month appellant was placed back on leave with pay status.

On October 10, 1979, Dr. Farr, one of the members of the panel that had examined appellant in May 1978, resigned from the panel. After Farr's resignation, respondents asked appellant to choose a replacement for Farr so that additional psychiatric examination of appellant could be conducted. Appellant refused to select a replacement for Farr. On December 13, 1979, the board placed appellant on leave of absence without pay status because of his refusal to accept a panel of psychiatrists composed of the two remaining members of the original panel and a replacement for Farr. Appellant demanded that the salary and benefits be reinstated retroactive to December 13, 1979, and was refused.

## CONTENTIONS

Appellant alleges the unconstitutionality of section 44942 on its face and contends that the manner in which the statute was applied by respondents violated his due process rights. Appellant argues that the section is unconstitutional on its face under the United States Constitution and the California Constitution because it permits the stigmatization and suspension of a tenured employee without affording a presuspension hearing and without distinguishing between emergency and nonemergency circumstances. Appellant asserts that the board's suspension of appellant's salary and benefits prior to any finding of mental illness was inconsistent with the requirements of the statute.

Respondents contend that the statute is constitutional on its face and was not applied in a manner violative of appellant's due process rights. Respondents assert that their actions were consistent with the requirements of section 44942 inasmuch as the statute contains no language expressly defining the nature and scope of the psychiatric examination of the employee.

The parties also make various other contentions. Having carefully considered all contentions raised by the parties, we find it unnecessary to discuss the contentions as to the statute's constitutionality in light of our disposition of the other issues.

## DISCUSSION

### I

Section 44942 specifies a procedure designed to provide a summary resolution of the question whether an employee was, at the time of his suspension, suffering from mental illness to such an extent as to render him incompetent to perform his duties. Subdivision (b) requires that upon an employee's suspension pursuant to subdivision (a), the governing board must provide the employee with written notice of the basis for the board's belief and an opportunity to be heard within 10 days of the board's action. If, after the employee's appearance before the board, a decision is made to continue the employee's suspension, the employee is to be given the opportunity of being examined by a panel of three psychiatrists who will review the board's determination.[3] Subdivision (d)

---

[3]Subdivision (c).

requires that the examination be held within 15 days of any suspension on the grounds of mental illness pursuant to subdivision (a). The statute directs the panel of psychiatrists to file a written report containing a finding as to whether the employee is suffering from "mental illness of such a degree as to render him incompetent to perform his duties."[4] The report must be filed within 10 days after completion of the examination.[5]

If the panel's report contains a finding that the employee is not suffering from mental illness of such a degree as to cause him to be incompetent to perform his duties, the statute directs the board to reinstate the employee to his position and to expunge from the employee's personnel file all references to the suspension and the panel's determination.[6] If the panel makes a written finding that the employee is suffering from mental illness sufficient to render him incompetent to perform his duties, section 44942 permits the board to place the employee on a mandatory sick leave of absence for a period not to exceed two years.[7] The employee is then given the opportunity immediately to demand a hearing; if a hearing is demanded, the board is required to file a complaint in the superior court for the court to review the board's findings.[8] If the court finds that the employee was not "at the time of the suspension" incompetent to perform his duties and that he should not have been placed on mandatory sick leave, the employee is to be reinstated to the same or a substantially similar position with full back salary, and the employment records of the suspension and of the panel's report are to be destroyed.[9]

## II

The requirement of an opportunity to appear before the board within 10 days of the employee's being placed on suspension with pay, the requirement of a psychiatric examination at the employee's request within 15 days of his suspension with pay, the duty of the psychiatric panel

---

[4]Subdivision (d).
[5]*Ibid.*
[6]Subdivision (e).
[7]Subdivision (f).
[8]Subdivision (g).
[9]Subdivision (h).

to file a written report within 10 days after completion of the examination, and the employee's right immediately to demand a hearing in the superior court to review the board's determination if the panel's finding is adverse to the employee all reflect an intent of the Legislature to provide an expeditious procedure for the review of the board's initial finding of mental illness.

■ Respondents contend that section 44942 should be construed to permit psychological tests if a panel deems such tests helpful to an evaluation of the employee's mental state. We do not find such testing to be within the contemplation of the Legislature. The purpose of the psychiatric examination authorized by section 44942 is to provide forthwith to the board a psychiatric opinion of the employee's mental state; the statute does not authorize a complete program of testing. Any other construction of what the Legislature meant by a psychiatric examination could well render the statute constitutionally infirm because it would have the effect of depriving an employee of his job for perhaps a very protracted period of time before he would be entitled to any form of judicial review.

Respondents also argue that a series of psychiatric examinations, if the panel deems them advisable, should be permitted before the psychiatric examination under subdivision (c) is to be considered completed and thus before a finding of the panel is required. Respondents assert that the delay in obtaining a finding of a panel that required additional psychiatric examination of an employee necessary would not normally be great if the employee cooperated with the panel. If a school board is to be permitted to construe subdivision (c) to permit the board to require an employee to submit to additional psychiatric examination until the panel is able to reach a decision concerning the employee's mental state, what are the limits? To extend the employee's suspension by allowing the panel an opportunity to require additional psychiatric examination once one psychiatric examination has been conducted defeats the legislative scheme for obtaining a prompt resolution of the propriety of the employee's suspension.

The statutory purpose of an early opportunity to resolve whether the board's finding was correct is not served by permitting the psychiatric examination pursuant to subdivision (c) to be conducted in stages. In the case at bar, a proceeding that should have been conducted in an ac-

celerated manner was still not considered final by respondents 19 months after the first psychiatric examination of appellant had commenced. A psychiatric examination pursuant to subdivision (c) must be conducted within a reasonable time rather than over a protracted period of time. The construction that respondents would have this court place on the phrase "completion of the examination" in subdivision (d) runs counter to the statutory purpose of a procedure for expeditious review of the board's finding. To permit the school district to give the psychiatrists free rein to conduct as many examinations as they deem necessary and, in so doing, to place the employee in the position of jeopardizing his employment by noncooperation with the district is to permit the statute to be rewritten by the school district.

■ Once the panel has made a finding that the employee is not suffering from mental illness of such a degree as to render him incompetent to perform his duties, the question arises whether the panel must also determine that the employee should be permitted to return to the duties of his position. While subdivision (d) requires the panel to make a written finding on whether "the employee is suffering from mental illness of such a degree as to render him incompetent to perform his duties," subdivision (e) provides that "[i]f a majority of the panel concludes that the employee should be permitted to return to his duties, no written record of the suspension or of the determination of the panel shall be retained . . . ." In the case at bar, respondents contend that the inability of the panel to make either finding after the panel examined appellant justified requiring appellant to submit to additional examination and to psychological testing. We hold that the Legislature did not intend to require both that the panel evaluate the degree of mental illness insofar as it may affect the employee's ability to perform the duties required of him and, after making such finding, to decide if the employee should be permitted to return to work. The sole question addressed to the panel is whether mental illness, if it exists, is sufficient to affect the employee's ability to perform the duties of his position. Any other reason for suspension of the employee is not within the contemplation of the statute.

In interpreting subdivision (e), an understanding of the board's duties under subdivision (h) is instructive. Subdivision (h), which governs the superior court's evaluation of whether the employee should have been suspended, requires a determination by that court whether the employ-

ee, at the time of the suspension, was incompetent to perform his assigned duties. The result of a finding under either subdivision (e) that the employee should be permitted to return to his duties or of a finding under subdivision (h) that the employee was not incompetent to perform his assigned duties is the same—a return of the employee to his duties and destruction of any records of the suspension and the panel report. Thus, subdivision (e)'s mention of the panel's determination whether the employee should be permitted to return to work is a reference to the finding required of the panel by subdivision (d)—the evaluation of any effect of mental illness on an employee's competence to perform his duties. The only finding of the panel required by section 44942 is the one specified by subdivision (d). To express our interpretation in another way, the conclusion of the panel referred. to in subdivision (e) that "the employee should be permitted to return to his duties" is a corollary to the finding required in subdivision (d).

■ The statute does not deal expressly with the board's duties to the employee in the event that the panel is unable to certify within 10 days of the examination whether the employee is suffering from mental illness of such a degree as to render him incompetent to perform his duties. The stigma associated with a label of mental illness is substantial. Section 44942 attempts to avoid the full severity of such stigma by providing that all proceedings of the board pursuant to that section are to be held in executive session and by providing for a prompt opportunity for the employee to clear his name and, if successful, to have all references to the proceedings expunged from his records. We hold that the lack of an express written finding by the psychiatric panel, within the requisite statutory time,[10] that the employee is suffering from mental illness of such a degree as to render him incompetent to perform his duties must be treated by the board as a finding that the employee is not suffering from such mental illness and, in fact, a conclusion that the employee should be permitted to return to his duties.

### III

■ Since there was no finding by the panel that appellant was suffering from mental illness of such a degree as to render him incompetent to perform his duties, suspension of appellant's salary and benefits

---

[10]The findings are required within 10 days of completion of the examination.

was improper. Subdivision (c) creates a mandatory duty on the part of the governing board and the district that "[t]he employee shall continue to receive his regular salary and all other benefits of employment during the period dating from his suspension to the filing of the report of the panel with the governing board." Unless that report contains a finding that the employee was suffering from mental illness to such an extent as to render him incompetent to perform his duties, the employee's salary and benefits must continue in effect. The board was not excused of this duty by the panel's statement that it was unable to certify either that appellant was suffering from mental illness of such a degree as to render him incompetent to perform his duties or that appellant should be permitted to return to his duties. The absence of a finding by the panel that appellant was suffering from "mental illness of such a degree as to render him incompetent to perform his duties" when a finding on that question was due required the board to reinstate appellant to his duties and to continue the payment of appellant's salary and benefits. Since there was no such finding by the panel of psychiatrists in the case at bar, appellant is entitled to the issuance of a writ of mandate compelling respondents to reimburse him for his monetary loss in pay and benefits since the date of his suspension until February 1, 1981. (*Kalinowski* v. *Board of Education* (1979) 90 Cal.App.3d 245 [153 Cal.Rptr. 178].)

Responding to this court's request to counsel for the respective parties to supplement the record after oral argument, counsel for respondents furnished a copy of a document entitled "Approval of Disability Allowance" issued by the State Teachers' Retirement System to appellant. We take judicial notice of the said act of the State Teachers' Retirement System. (Evid. Code, §§ 452, 459.) Evidence Code section 455 has also been complied with in that appellant has been apprised of the furnishing of this information to this court for a period of more than 30 days and has not demurred thereto.

As appellant has applied for and received a disability retirement effective February 1, 1981, we do not order his reinstatement to his previous position of employment or to a substantially similar position.

The judgment denying the petition for a peremptory writ is reversed. The case is remanded for a determination of the amount of unpaid salary and benefits that accrued to appellant from December 13, 1979, to February 1, 1981, less any credits to which respondents are entitled by

reason of payments made to appellant or other mitigation of damages as provided by law.

Lillie, Acting P. J., and Devich, J.,* concurred.

Petitions for a rehearing were denied November 25, 1981, and respondents' petition for a hearing by the Supreme Court was denied December 23, 1981.

*Assigned by the Chairperson of the Judicial Council.