[No. A039886. First Dist., Div. Five. Sept. 15, 1989.]

JAUNITA RAVEN, Plaintiff and Appellant, v.
OAKLAND UNIFIED SCHOOL DISTRICT, Defendant and
Appellant.

COUNSEL

Arlo Hale Smith for Plaintiff and Appellant.

Gary A. Hall, Michele C. Kibbe-Chairs, Cecilia P. Castellanos, Joseph Remcho, Kathleen J. Purcell, Steven D. Dopkin and Remcho, Johansen & Purcell for Defendant and Appellant.

OPINION

**LOW, P. J.**—A tenured teacher on sick leave for work-related mental illness is entitled to reinstatement upon presentation of prima facie medical evidence of recovery sufficient to resume teaching. In order to refuse reinstatement of the tenured teacher, the school district has the burden of proving mental incompetence to resume teaching duties, and must comply with the procedural provisions of Education Code section 44942.[1] Sick leave payments, workers' compensation rights, teacher retirement benefits or a collective bargaining agreement may afford additional rights to those set forth in section 44942.

---

[1] All section references are to the Education Code unless otherwise indicated.

On February 17, 1982, Juanita Raven, a tenured teacher, suffered severe chest pains, nausea, and dizziness at work allegedly due to difficulties between her and her new principal. The school nurse advised Raven to seek medical attention, and for the next 16 months Raven took voluntary sick leave from her position, receiving various benefits under the Oakland Unified School District's (district) collective bargaining agreement.

Plaintiff filed a workers' compensation claim for "injury" to "her psyche." Several physicians and psychiatrists examined Raven finding that her injury had been caused by her employment and that she was unable to return to work. The district stipulated to Raven's temporary disability and on February 7, 1983, the Workers' Compensation Appeals Board (WCAB) awarded her temporary disability indemnity, deferring any decision of permanent disability.

By June 10, 1983, Raven exhausted all benefits available from the district and reached an unpaid leave status, although she still received workers' compensation benefits. In September 1983, Raven applied for disability allowance with the State Teachers Retirement System (STRS). Between September and December 1983, Raven spoke with the district's workers' compensation claims administrator requesting reinstatement, and on December 23, 1983, she sent a letter to Superintendent David Bowick informing him that her doctor, Roger Lauer, had permitted her to return to work. This request was based on Dr. Lauer's December 16 report to the claims administrator stating, "I am not certain that she can weather the stress of returning to her regular work. However, the circumstances are such that I think that she might be capable of returning to work and that she deserves an opportunity to try to do so. . . . [¶] Consequently, my recommendation is that an attempt be made to design a work program for her with effort being given to keeping the stress level as low as possible."

In early 1984, Raven sought reinstatement from the district's personnel department, and was referred to Dr. Frederick Foston, a pediatrician serving as consultant to the district's personnel office. Dr. Foston recommended that Raven return to her full-time position, provided that she continue to see Dr. Lauer "so that she can continue to handle stress in a positive manner," and also recommended that she be assigned to another school. In March 1984, the district's staff psychiatrist, Dr. Petrakis, again examined Raven pursuant to the workers' compensation proceedings, concluding that if Raven were permitted to return to work "she will be overwhelmed once again and likely incur further injury should she return to teaching." Dr. Petrakis has maintained this opinion throughout these proceedings.

On March 23, 1984, the Rehabilitation Bureau of the Division of Industrial Accidents, as part of the workers' compensation proceedings, found

that Raven was a "qualified injured worker" "precluded, or likely to be precluded from returning to her usual and customary occupation . . . at the time of injury." The rehabilitation bureau recommended that Raven be afforded a trial return to work as the best means of rehabilitation. Otherwise, they recommended that she seek other occupational alternatives. Raven then began receiving vocation rehabilitation benefits.

On April 4, 1984, the director of personnel for the district denied Raven's request for reinstatement. He informed Raven that a trial return to work was not feasible for the district. He further explained that a trial return to work posed a health risk to Raven and could be detrimental to the students should the trial period not work out.

Raven filed a grievance under the district's collective bargaining agreement on April 11, 1984, concerning the district's refusal to reinstate her to her teaching position. On May 2, 1984, the arbitrator dismissed Raven's grievance, finding that she had not been terminated or suspended by the district; furthermore the district had not treated her differently than it treated other teachers on leave due to psychological problems. Raven moved to vacate the arbitration award. A hearing on the matter was scheduled for October 9, 1985, but on September 30, 1985, Raven's counsel took the motion off calendar.

STRS denied Raven's application for disability allowance finding the "[i]ndependent psychiatric evaluation revealed no evidence of any significant psychiatric impairment . . . . [and] that you are not disabled and believe you should be given [an] opportunity to return to work." The district still refused to reinstate Raven despite this finding.

Between May 2 and November 28, 1984, Raven explored other employment opportunities with the help of the rehabilitation bureau. On November 28, 1984, however, the bureau suspended further rehabilitation because of Raven's preoccupation with returning to her former teaching position with the district. The bureau then ordered the district to pay retroactive temporary disability benefits for the period from November 1, 1983, through March 31, 1984.

Raven appealed the rehabilitation bureau's November 28, 1984, order to the WCAB, arguing that the district refused to reinstate her without following hearing procedures specified in section 44942 and forced the suspension of her rehabilitation benefits. Raven also filed a grievance with the WCAB under Labor Code section 132a (hereafter section 132a), alleging a violation of section 44942 and that the district's refusal to reinstate her was "solely because of her admitted industrial injury." The district argued that the

WCAB had no jurisdiction over Education Code violations and denied violations of the Education Code and section 132a.

On January 31, 1985, Raven filed a petition for a writ of mandate in superior court, alleging that the district violated sections 44942 and 44955. The WCAB proceedings were still pending when she filed her petition for writ of mandate. On June 27, 1986, the WCAB ruled that Raven suffers from a permanent partial disability, denied her request for reinstatement, and rejected her retaliatory discrimination action under section 132a. On reconsideration, the WCAB judge affirmed the ruling on September 18, 1986. Raven appealed the finding to the WCAB and sought review in this court and the California Supreme Court. The WCAB affirmed the ruling and her petitions for review were denied.

In the separate action, the superior court granted Raven's petition for writ of mandate, ordered the district to reinstate her, and awarded her backpay from January 31, 1985, with setoffs for permanent disability allowances and income from outside part-time employment. Raven appeals the backpay award, requesting that backpay be awarded from either June 1983 or some intermediate date, and also appeals the setoffs for earnings received from weekend meetings Raven attended as a member of the State Board of Landscape Architects and for permanent disability benefits she received under workers' compensation. The district cross-appeals, arguing that Raven does not fall within the purview of the Education Code provisions, that workers' compensation is Raven's exclusive remedy, and that she is collaterally estopped from litigating the Education Code violations by the WCAB ruling.

I

The district presents three arguments to support its refusal to either reinstate Raven or to provide her a psychiatric hearing in accordance with section 44942. First, the district contends that the Education Code does not apply to Raven because she has not been formally suspended, terminated, or placed on mandatory sick leave by the district's governing board. Second, the district relies on its collective bargaining agreement which provides that "[f]ollowing an absence of 30 days or more due to illness, the employee shall submit a physician's statement indicating the employee is able to return to normal duties." Third, the district relies on a separate provision of its collective bargaining agreement which states that "[r]eturn to duty is dependent upon the physician's statement of recovery and final approval of the District's physician."

We must determine which party shoulders the burden of going forward with the evidence and the burden of proving whether a tenured teacher is

mentally competent to perform her duties. This necessarily requires a determination of when Raven's hearing rights are triggered.

■ We agree with the district that pursuant to the collective bargaining agreement, after an employee has taken a leave of absence for 30 days or longer, as has Raven, the employee bears the burden of going forward by presenting medical evidence of recovery. The district contends, however, that a tenured teacher not only shoulders the burden of presenting medical evidence of recovery, but her return to work is subject to approval by the district's physician. Thus, even if a tenured teacher submitted unconditional statements by her psychiatrist that she had fully recovered, the district argues that it would still be entitled to deny her requests for reinstatement if its staff psychiatrist did not agree with the conclusions of the teacher's psychiatrist. The district could then circumvent a mental competency hearing simply by taking no formal action to suspend or dismiss the teacher. This would be contrary to the provisions of the Education Code, and would place the tenured teacher in an untenable position, since she would have no recourse to dispute the staff psychiatrist's determination. The district's approach would also substitute the staff psychiatrist's determination for that of the psychiatric panel provided for in section 44942. We conclude that once an employee has presented medical evidence of recovery, the district bears the burden of proving she is mentally incompetent to teach, and must accord her the hearing procedures mandated by section 44942.

■ We are not persuaded by the district's argument that section 44942 does not apply to Raven's case because it has taken no formal action to suspend or dismiss Raven. In *Kalinowski* v. *Board of Education* (1979) 90 Cal.App.3d 245 [153 Cal.Rptr. 178], the plaintiff, like Raven, voluntarily took a leave of absence for "severe emotional disturbances." The district properly notified the plaintiff that she was being suspended from her tenured position because of a psychological report indicating her inability to continue teaching. The court found that once the district notified the plaintiff of its intent to suspend her, she was entitled to section 44942 hearing procedures, which the district neglected to hold.

By contrast, the district in the present action did not so inform Raven, but accomplished the same result by refusing to reinstate her. In effect, the district circumvented the statutory procedures by requiring final approval for return to duty from its staff psychiatrist and by refusing to take formal action against Raven. The district may not deprive a tenured teacher of her employment rights indirectly when it could not do so directly. Otherwise, in similar cases the district could read out of the statute the procedural requirements where an employee seeks to return to work after taking voluntary sick leave. By refusing to take formal action to suspend or dismiss

Raven, the district has deprived Raven of the procedural safeguards that section 44942 has specifically granted to a tenured teacher to ensure that allegations of mental competence are fully adjudicated by an impartial panel and subject to judicial review. As the *Kalinowski* court stated, although in a different context, "the district cannot now set out its own fault to avoid what the statute has expressly given to the teacher." (90 Cal.App.3d at p. 250.)

■ A permanent employee, such as a certificated tenured teacher, has a vested right to her position and may not be deprived of it without due process of law. (*Forker* v. *Board of Trustees* (1984) 160 Cal.App.3d 13, 19 [206 Cal.Rptr. 303].) Where the teacher's mental competence is at issue, California courts require the school district to comply with various Education Code hearing procedures in order to satisfy due process. (See *id.*, at pp. 19-20.) The district shoulders the burden of proving that the tenured teacher is incompetent to teach (*Board of Trustees* v. *Porini* (1968) 263 Cal.App.2d 784, 790 [70 Cal.Rptr. 73]), and may not circumvent this burden by relying on its collective bargaining agreement. (See § 44924; *California Teachers' Assn.* v. *Parlier Unified School Dist.* (1984) 157 Cal.App.3d 174, 183 [204 Cal.Rptr. 20] [nonwaiver provision of § 44924 applies to collective bargaining agreements].)

■ The legislative policy behind the Education Code as applied to the plain facts in this record requires that Raven be reinstated or granted a section 44942 competency hearing. Fairness in the treatment of tenured teachers demands this. ■ "[I]t is quite obvious that it was the legislative intent that no teacher and especially one holding permanent tenure should be deprived of his credential to teach in any of the public schools in this state without some sort of charges being filed against him, and without being afforded the right of trial thereon, so that he may defend himself against such charges." (*Matteson* v. *State Bd. of Education* (1943) 57 Cal.App.2d 991, 998 [136 P.2d 120].)

■ The district, however, contends that Raven has not submitted prima facie evidence of recovery. We disagree. Three separate opinions of the psychiatrists who examined Raven in the STRS proceedings concluded she had recovered sufficiently to return to work. In September 1983, Raven applied for STRS retirement benefits. As a condition for receiving these benefits, Raven submitted to three psychiatric examinations. On February 27, 1984, Dr. Alfred Marquez, Raven's personal physician, unconditionally recommended Raven could return to work finding no medical or psychiatric impairment. On May 9, 1984, Dr. Randall Smith recommended Raven could return to work noting there was no reason to assume that she would reexperience her stress-related symptoms. On May 14, 1984, Dr. Patrick Buchanan recommended Raven could return to work since he could not

identify any psychiatric disorder. Based on these evaluations, STRS denied Raven's request for retirement benefits finding she could return to work.

In accord with the legislative scheme carefully developed by the drafters of the Education Code, the STRS finding must be deemed a prima facie showing of fitness to return to work. Section 44986.1 provides: "Any member for whom the employer makes application for disability allowance and whom the State Teachers' Retirement System finds not to be disabled under this chapter, shall be reinstated to the former position upon receipt by the employer of notification from the system of the denial of the disability allowance." While this section does not give Raven an unequivocal right to reinstatement upon the STRS finding of mental competence because she, not the district, filled out the application for disability retirement, the STRS finding should serve as a prima facie statement of recovery, giving rise to the district's duty to either reinstate her or hold the competency hearing contemplated by section 44942. The statute indicates the Legislature's intent that the findings made by the STRS are relevant to, and in some cases dispositive of, the determination of an employee's recovery and reinstatement.

The district asserted in oral argument that it never received the STRS findings. The record clearly demonstrates that the district received the findings of the STRS independent psychiatric board, but refused to reinstate Raven. In a letter from the district's counsel to Raven's attorney dated December 7, 1984, the district states that "[i]t is the District's position that the above code section [44986.1] applies only in cases where 'the employer makes application.' As the records clearly indicate, Mrs. Raven, and not the District, made application for the STRS disability allowance. . . . [¶] The Rehabilitation Consultant let stand the earlier determination that Mrs. Raven is a QIW (Qualified Injured Worker). Based on the latter, the District is not prepared to reinstate Mrs. Raven at this time." Counsel for the district also indicated in oral argument that the STRS proceedings were somewhat of a farce, since Raven told the examiners that she did not wish to receive disability retirement. That statement is unsupported by the record. The district's contention that the STRS proceedings would be tainted in favor of Raven's desire to be found mentally competent is an unfair characterization of the purpose of the STRS and the detailed psychiatric opinions rendered by the independent psychiatrists who examined Raven.

Even prior to conclusion of the STRS proceedings, Raven had presented the district with a prima facie showing of her ability to return to teaching. On December 16, 1983, Dr. Lauer recommended a trial return to work, although he expressed uncertainty concerning whether Raven could "weather the stress." On March 8, 1984, Dr. Petrakis examined Raven once

again and recommended she should not return to work because her symptoms could recur. On March 22, 1984, Dr. Frederick Foston, head of the district's health services, reviewed Raven's medical file, including the psychiatric evaluations of Drs. Lauer and Petrakis. He sent a memo to May Jang, head of the certificated personnel department of the district, concluding that Raven could return to work so long as she continues to see Dr. Lauer. A copy of that memo was forwarded to Dr. Robert Rottman, director of personnel for the district. On April 4, 1984, Dr. Rottman wrote to Raven denying her request for reinstatement based on the reports of Drs. Petrakis and Lauer.

At the time of Dr. Rottman's decision, then, the district was in receipt of reports from Drs. Foston and Lauer, both recommending a return to work. Although not absolute or unconditional, those medical opinions were prima facie evidence that Raven could resume her teaching duties.

The district contends Dr. Lauer's opinion, because of the reservations expressed, did not constitute medical evidence of recovery. The district would place the ultimate burden upon Raven to prove her mental competency first by an absolute statement of recovery before the district is required to hold a mental competency hearing.

The pragmatics of such a rule of law are shown by what has occurred in this action. Once the employee provides the district with a statement of recovery, the district may simply decide that the statement is conditional or comes from a source, such as the STRS, whose opinion the district, for whatever reason, is not prepared to accept. If the district concludes that the teacher's statement of recovery is in some way deficient, it can, as it has done here, avoid holding a mental competency hearing altogether on the ground that the statement of recovery does not meet the requirement of an "unconditional" prima facie statement. This would leave teachers such as Raven with the burden of proving her mental competency before she is entitled to any procedural rights, a situation that is clearly not contemplated by section 44942. Rather, the Education Code has been consistently construed to require the district, not the employee, to shoulder the burden of proving an employee's mental incompetence. (*Board of Trustees* v. *Porini, supra,* 263 Cal.App.2d at p. 790.)

Moreover, the district has repeatedly denied Raven's request for reinstatement because its staff psychiatrist has concluded or speculated that Raven may reexperience stress-related symptoms. It also has denied her request because Raven's psychiatrist states that he was not "certain" that Raven could "weather the stress" in the future, although he felt that her condition had progressed to the point that she deserved the opportunity to

return to work. It is interesting to note that in analogous administrative contexts, the risk or fear of prospective disability is not considered a permanent incapacitation compensable by disability retirement. (*Hosford* v. *Board of Administration* (1978) 77 Cal.App.3d 854, 863-865 [143 Cal.Rptr. 760].)

Because Raven has met her burden of producing medical evidence of recovery, the district must either reinstate her or invoke the hearing procedures of section 44942. Section 44942 requires the district to give the employee a written statement of facts and an opportunity to explain or refute the charges within 10 days. (§ 44942, subd. (b).) If the district concludes the tenured teacher's explanation or refutation is insufficient, it must take formal action to suspend or dismiss her. Once this formal action is taken, the teacher is entitled to be examined by three psychiatrists chosen by her from a list provided by the district. (§ 44942, subd. (c).) These examinations are to be conducted at the district's expense within 15 days of any suspension or dismissal. In addition, the teacher may be represented at the hearing by a psychiatrist of her choosing, and her psychiatrist may submit a report to the panel of psychiatrists. (§ 44942, subd. (d).) Within 10 days of the examinations, the panel must submit a written report to the district containing a finding on whether the employee suffers from a mental illness rendering her incompetent to perform her duties. (§ 44942, subd. (d).)

If a majority of the psychiatric panel conclude that the employee is mentally competent, the district must eliminate all references to the employee's suspension or transfer and immediately reinstate the employee to the same or a substantially similar position. (§ 44942, subd. (e).) If, on the other hand, the panel finds the employee incompetent to perform her duties, the district may place her on mandatory sick leave of absence. Mandatory sick leave of absence may not exceed two years, and during that time the employee is entitled to sick leave, hospital and medical benefits accrued during her employment. (§ 44942, subd. (f).) Any employee placed on mandatory sick leave of absence may immediately demand a hearing. If the employee opts for a hearing, the district must file a complaint in the superior court setting forth the charges that the employee is incompetent to perform her duties. (§ 44942, subd. (g).)

The superior court must determine whether or not the charges are true, and if they are true, whether they justify placing the employee on mandatory sick leave of absence. (§ 44942, subd. (g).) If the court finds that the employee was wrongfully placed on mandatory sick leave, the district must immediately reinstate her to the same or substantially similar position and must expunge all references to her placement on mandatory sick leave from her employment record. (§ 44942, subd. (h).) If the court finds that the employee was properly placed on mandatory sick leave of absence or if the

employee does not seek a hearing, the employee may request a new panel of psychiatrists to examine her at the district's expense between six months and two years after the date she was placed on mandatory sick leave. (§ 44942, subd. (i).)

The employee may not remain on mandatory sick leave of absence for longer than two years. At the end of two years, the district must either rescind its action and reinstate the employee or serve her with notice of intent to dismiss. (§ 44942, subd. (i).) If the new psychiatric panel finds the employee mentally competent, the district must immediately reinstate her to her position or a substantially similar one. (§ 44942, subd. (j).) Finally, all hearings and any actions taken pursuant to this section are to be conducted in an executive session of the district, and nothing that transpires at these sessions may be made public unless the employee requests such publication in writing. (§ 44942, subd. (k).)

The district must either reinstate the employee or hold a mental competency hearing once the tenured teacher presents medical evidence of recovery, for reasons readily apparent from an examination of this record. First, the employee is entitled to a speedy resolution of the issue of her mental competency. The provisions calling for independent psychiatric evaluation subject to judicial review and to periodic updates on the teacher's condition ensure that the employee has sufficient recourse from an adverse finding of mental incompetence to teach. Moreover, the interests of administrative economy are better served when there is a brightline rule setting forth when the teacher's right to a mental competency hearing is triggered.

Second, the final determination of the employee's mental competence must be made by an impartial panel of psychiatrists. The appearance of impartiality afforded by the procedures set forth in section 44942 is particularly important where the employee's mental or emotional condition is questioned. Adherence to these procedures dispels any criticism that a teacher was suspended or terminated (or effectively suspended or terminated) because of personal disagreements with her principal or supervisor, a situation that is intimated in this case.

Third, and perhaps most importantly, adherence to these procedures minimizes the stigma associated with a label of mental illness. This policy was fully discussed in *Buchan v. Las Virgenes Unified School Dist.* (1981) 124 Cal.App.3d 1088 [177 Cal.Rptr. 788]. The court stated that because the stigma of mental incompetence is substantial, "[s]ection 44942 attempts to avoid the full severity of such stigma by providing that all proceedings of the board . . . are to be held in executive session and by providing for a prompt opportunity for the employee to clear his name and, if successful, to

have all references to the proceedings expunged from his records." (*Id.,* at p. 1098.) The executive session requirements are necessary to protect the employee's privacy and the procedures set forth in section 44942 grant the employee extensive procedural rights to prevent the kind of stigma that may attach to a teacher when the district unilaterally denies a request for reinstatement.

The district argues that these procedural safeguards require employees on sick leave to make "hard choices" between (1) remaining on unpaid sick leave or (2) facing formal suspension if their requests for reinstatement are denied. ■ The district, however, may still require medical evidence of recovery so long as it does not require final approval by the district's physician in cases of mental incompetence. The notice and hearing provisions of section 44942 are limited by their terms to only those cases where the employee's mental competence is at issue. We only extend these provisions to cases where the district refuses to reinstate an employee once she has presented psychiatric evidence that she has recovered sufficiently to return to work. The district, therefore, need only invoke formal suspension or dismissal proceedings against that limited class of employees. The district need not formally suspend those employees whose reinstatement is denied for other valid medical reasons, since in most of these cases there is no stigma attached to their illness and medical conclusions of recovery are not so subjective.

■ To the extent that the district's collective bargaining agreement requires final approval for reinstatement by the district's physician in cases of mental incompetence, that provision is invalid as it conflicts with the requirements of the Education Code. We note that the district's argument that Raven has received sufficient notice and opportunity to be heard to satisfy the broad standard of due process must likewise fail. We have concluded that adherence to the statute is required for the district to deprive a tenured teacher of her vested right to employment.

■ Finally, the district argues that even if the Education Code provisions apply to Raven, she is barred by laches from asserting these rights. The defense of laches requires an unreasonable delay and either acquiescence by the party charged with laches or prejudice to the party asserting the defense. (*Forker* v. *Board of Trustees, supra,* 160 Cal.App.3d at p. 20.) The district argues that laches applies because Raven did not raise her Education Code claims until December 1984, approximately a year and a half after she exhausted her sick leave and employment benefits. We do not find this to be an unreasonable delay, however, since Raven initially requested reinstatement between September and December 1983. If the district had not improperly relied solely on the opinion of its staff psychiatrist,

Raven would not have had to endure the protracted period of WCAB proceedings, rehabilitation counseling and psychiatric examinations that transpired in 1984. Further, by no means can we say that Raven acquiesced in the district's refusal to reinstate her. She has repeatedly requested her reinstatement since late 1983. Likewise, the district has affirmatively demonstrated no prejudice, and any prejudice that may have occurred was caused by the district's narrow reliance on the evaluation of its staff psychiatrist. (See *Kalinowski* v. *Board of Education, supra,* 90 Cal.App.3d at pp. 251-252.)

Educators, like Raven, who have devoted over 20 years to the teaching profession deserve better treatment than she received from the district. The stress inherent in teaching students in an urban environment should be dealt with with more dignity by the district, particularly when the stress may have been initially created by one of the district's own employees, Raven's principal.

## II

The district next contends that the doctrine of res judicata and the exclusivity of the workers' compensation remedy bar Raven from seeking reinstatement and backpay, and from asserting her section 44942 rights. We first note that in the workers' compensation proceedings Raven received certain disability and rehabilitation benefits, and later she filed a claim with the WCAB under section 132a, asserting that the district refused to reinstate her solely because of her industrially related mental illness. She also asserted a violation of section 44942 in the section 132a proceedings. The district argues that because section 132a affords a remedy for reinstatement and backpay, it is Raven's exclusive remedy and she is barred by res judicata from litigating her claim in the superior court. In the WCAB proceeding, however, the district asserted the opposite position—that the workers' compensation laws have no applicability to Raven's rights under the Education Code.

## A

The Workers' Compensation Act balances the workers' interest in a speedy no-fault determination of their claims for injury against the right to litigate for damages in a trial court. (*Portillo* v. *G.T. Price Products, Inc.* (1982) 131 Cal.App.3d 285, 287 [182 Cal.Rptr. 291].) The exclusivity of workers' compensation has been carefully preserved by California courts. For example, in *Potter* v. *Arizona So. Coach Lines, Inc.* (1988) 202 Cal.App.3d 126 [248 Cal.Rptr. 284], plaintiff sued his employer for damages resulting from the employer's failure to notify him that he had been

terminated. Once terminated, plaintiff had a statutory right to convert his group insurance policy to individual coverage. Plaintiff had suffered a work-related injury that required medical treatment and his wife suffered from a life-threatening disease. Since his employer failed to notify him that he had been terminated, plaintiff did not have the opportunity to convert his group coverage to an individual policy and his insurer cancelled the policy. Plaintiff's complaint alleged causes of action against his employer for wrongful termination, intentional infliction of emotional distress and various theories of negligence. The court found that since the failure to notify plaintiff of his termination and the cessation of plaintiff's health benefits were normal incidents to the employment relationship, plaintiff's claim was compensable solely under workers' compensation. (*Id.*, at pp. 134-135.)

Similarly, in *Portillo, supra,* plaintiff alleged that she was discharged from her job because she sought workers' compensation for injuries received in her employment. She attempted to sue her employer in superior court seeking general and punitive damages. Even though punitive damages are not available in administrative proceedings (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323]), the court held that plaintiff could not maintain her superior court action because of the exclusivity of workers' compensation over section 132a claims. (*Portillo* v. *G.T. Price Products, Inc., supra,* 131 Cal.App.3d at pp. 289-290.)

■ In particular, section 132a is designed to prevent retaliatory discrimination by employers against their employees who seek workers' compensation remedies based on work-related injuries. Section 132a expresses "a policy opposing *all* discrimination against workers based solely on their having been injured in the course of employment." (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 669 [150 Cal.Rptr. 250, 586 P.2d 564].)

■ The district argues that the legislative intent of section 132a requires Raven to seek redress for denial of her procedural rights under the Education Code within the exclusive framework of workers' compensation. In its answer to Raven's section 132a grievance, however, the district asserted that the WCAB had no jurisdiction to construe the Education Code provisions. The district cannot now contend Raven lost her due process rights in the workers' compensation proceeding.

Moreover, unlike the plaintiff in *Portillo,* Raven's superior court claim is not that the district has discriminated against her on account of her mental illness. Instead, she asserts that the district reached its finding that she is mentally incompetent to teach in violation of the procedural protections

afforded by section 44942. Even though section 132a recognizes the remedies of reinstatement and backpay, the identical remedies Raven sought in her superior court action, the gravamen of her petition was that she had been deprived of her statutory rights under the Education Code in violation of due process, not that the district's refusal to reinstate her was motivated by retaliatory discrimination. Further, unlike the statutory right in *Potter* to convert group insurance coverage to an individual policy, the statutory right under section 44942 specifies the district must take affirmative steps to conduct a psychiatric examination and a hearing to determine the employee's mental competence. The statutory right under the Insurance Code in *Potter* did not specifically mandate the employer to take any action. Instead, the employer's duty to notify the employee of his termination was merely an implied duty arising from the employment relationship itself.

The district's argument that Raven's Education Code rights are subsumed by the exclusivity of workers' compensation must also fail in order to preserve the vitality of the Education Code provisions. To accept the district's contention would read out these provisions from the Education Code altogether. It was not the intent of the Legislature to allow workers' compensation to supersede the procedural entitlements under the Education Code. In fact, in an analogous conflict between the Education Code and the Workers' Compensation Act, the Education Code provisions were found to supersede workers' compensation remedies. (Gov. Code, § 19871; see *Bidwell* v. *State of California* ex rel. *Dept. of Youth Authority* (1985) 164 Cal.App.3d 213, 220 [210 Cal.Rptr. 381].)

Section 22000 et seq. provides disability, rehabilitation and retirement benefits to school district employees under the STRS. Even though workers' compensation also provides rehabilitation and disability allowances similar to those afforded by the STRS, these benefits do not fall within the exclusive purview of workers' compensation. Instead, STRS benefits are to be allocated to school district employees *in lieu of* workers' compensation benefits. (Gov. Code, § 19871; *Bidwell* v. *State of California* ex rel. *Dept. of Youth Authority, supra,* 164 Cal.App.3d at p. 220 [holding that industrial disability leave benefits under STRS are only available to school district employees who are members of STRS and are contingent on continued state employment status]; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 60 [152 Cal.Rptr. 153] [holding that vocational rehabilitation benefits of Lab. Code, § 139.5 extend to public as well as private employees].)

By analogy, remedies under workers' compensation are not intended to supplant the procedural requirements under the Education Code in the same way that they do not supplant the substantive entitlements under the

STRS. We conclude that since Raven seeks relief for a violation of her procedural due process rights under the Education Code and not for a substantive claim of retaliatory discrimination, her claim was not within the exclusive jurisdiction of workers' compensation.

## B

■ The district, relying on *Takahashi* v. *Board of Education* (1988) 202 Cal.App.3d 1464 [249 Cal.Rptr. 578] (review den. Oct. 22, 1988), contends that the doctrines of res judicata and collateral estoppel bar Raven's petition in superior court. We disagree. In *Takahashi,* plaintiff was dismissed from her teaching position on the ground that she could not maintain control of her class. She was afforded a full hearing before the Commission on Professional Competence pursuant to section 44944, in which she alleged that the commission had no jurisdiction over her and that the criteria for judging incompetency were inadequate and not uniformly or objectively applied. (*Id.,* at p. 1470.) After the section 44944 hearing, the commission affirmed her dismissal. She then petitioned unsuccessfully in superior court for a writ of mandate against the commission's findings. After her petition was denied, plaintiff filed an action in federal district court for damages and injunctive relief, based on 42 United States Code sections 1981 and 1983, alleging various constitutional theories of wrongful discharge. (*Id.,* at pp. 1471, 1474-1475.) There, the court held that the denial of her writ of mandate in superior court barred her federal court action. The court specifically noted that the federal action was barred by her writ of mandate, not by the finding of the Commission on Professional Competence. (*Id.,* at p. 1474.)

The workers' compensation proceedings resolved that Raven suffered a stress-related industrial injury to her psyche entitling her to certain disability benefits, and that based on the psychiatric reports relied on by the district she had not been discriminated against on account of her industrial injury. These proceedings did not determine that Raven was mentally incompetent to teach. The district's refusal to reinstate Raven because she was mentally incompetent to teach does not constitute res judicata and may therefore be the subject of judicial review.

## III

■ Raven appeals her award of backpay from January 1985, arguing that she is entitled to backpay from June 1983 or some intermediate date. June 10, 1983, is the date that Raven exhausted her sick leave and other employment benefits.

It is well settled that public policy favors full backpay upon reinstatement and that backpay should be given from the time of the "unlawful discharge." (*Harris* v. *State Personnel Bd.* (1985) 170 Cal.App.3d 639, 643-644 [216 Cal.Rptr. 274]; *City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104, 107 [48 Cal.Rptr. 865, 410 P.2d 369]; see § 89540.) Our Supreme Court stated in *Fones* that "a civil service employee who has been unlawfully deprived of his position is entitled to recover the full amount of the salary which accrued to him from the date of his unlawful discharge to the date of his reinstatement." (64 Cal.2d at p. 107, italics omitted.)

Backpay is justified by the district's failure to accept Raven's statement of recovery and its improper reliance on the opinion of its staff psychiatrist in denying reinstatement. Even the district, in opposing the backpay award, acknowledges that April 4, 1984, would be a date that this court "may be inclined to consider," because on that date the district's director of personnel formally denied Raven's requests for reinstatement. That denial was based in part on the district's improper reliance on the "final approval" clause of the collective bargaining agreement. Since the district failed to either reinstate Raven or to afford her a proper hearing, she is entitled to backpay from April 4, 1984. On that date, any deprivation of Raven's tenured position became "unlawful," giving rise to her right to a hearing or to reinstatement.

Raven also appeals the setoff for certain weekend meetings that she attended as a member of the Board of Directors of the State Board of Landscape Architects. It is well settled that earnings from night or weekend work, which would not be inconsistent with school employment, should not be set off against any backpay award. (*Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 629, fn. 12 [39 Cal.Rptr. 739, 394 P.2d 579]; *Beseman* v. *Remy* (1958) 160 Cal.App.2d 437, 445 [325 P.2d 578].) The record, however, indicates that Raven attended many of these meetings on weekdays, and we therefore defer to the trial court's finding that Raven's seat on the State Board of Landscape Architects would have been inconsistent with any salary for her duties as a teacher.

Raven further appeals the setoff for permanent disability benefits she received under workers' compensation. The authority cited by Raven, however, is inapposite, since it concerns setoffs for permanent disability against future earnings, not against a backpay award. We agree with the district that the rationale in *Kalinowski* is persuasive. In *Kalinowski, supra,* the court considered whether a backpay award should be set off by disability benefits received from the STRS. The court concluded the setoff was proper to prevent double recovery. (90 Cal.App.3d at p. 251.) Moreover, in the present case, the WCAB specifically based its disability award on a

finding that Raven could not return to work. We therefore conclude that the setoff for permanent disability was proper to prevent double recovery.

The order of the trial court granting Raven's petition for writ of mandate is affirmed in part and modified to allow the district to institute section 44942 proceedings if it so chooses. The backpay award is also modified to reflect the date Raven's rights under the Education Code became cognizable, i.e., April 4, 1984. Raven is entitled to costs on appeal.

King, J., and Haning, J., concurred.

The petition of appellant Oakland Unified School District for review by the Supreme Court was denied December 13, 1989.