[No. C062554. Third Dist. Aug. 30, 2010.]

JANE DOE, Plaintiff and Respondent, v.
LINCOLN UNIFIED SCHOOL DISTRICT et al., Defendants and
Appellants.

COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo, Chesley D. Quaide and Marleen L. Sacks for Defendants and Appellants.

Driscoll & Associates and Thomas J. Driscoll, Jr., for Plaintiff and Respondent.

## OPINION

**HULL, J.**—Plaintiff is a permanent certificated teacher employed by defendant Lincoln Unified School District (the District). After the District placed plaintiff on sick leave shortly after the start of the 2008–2009 school year due to concerns over her mental fitness, plaintiff initiated this action against the District, the District's governing board (the Board), and the District's superintendent, seeking a writ of mandate to compel defendants to initiate proceedings under Education Code section 44942 (section 44942). Section 44942 provides a detailed procedure for determining if a teacher "is suffering from mental illness of such a degree as to render him or her incompetent to perform his or her duties." (§ 44942, subd. (a).) Plaintiff filed the action under a fictitious name in order to protect her privacy.

While this matter was pending, the District initiated section 44942 proceedings and placed plaintiff on paid administrative leave, as required by that legislation.

The trial court concluded the District was required to initiate section 44942 proceedings before placing plaintiff on involuntary sick leave. The court issued a peremptory writ of mandate compelling defendants to pay plaintiff her full salary during the period she was forced to use sick leave credits and to reinstate any other accumulated benefits lost during that period. The court thereafter entered judgment accordingly.

Defendants appeal. They contend plaintiff had no standing to pursue this action under a fictitious name. They further contend the trial court erred in concluding they were required to initiate proceedings under section 44942 earlier than they actually did.

We conclude defendants' standing argument is not well taken and defendants forfeited any other argument they might have regarding plaintiff's use of a fictitious name. We further conclude that, while section 44942 is not mandatory in all cases where a school district suspects a certificated employee may be suffering from a mental illness, it *is* mandatory where the

school district chooses to suspend or transfer a certificated employee due to mental illness. In this case, when the District chose to preclude plaintiff from reporting for work at the beginning of the 2008–2009 school year, it effectively suspended her, thereby requiring the District to initiate section 44942 proceedings. We therefore affirm the judgment of the trial court.

## FACTS AND PROCEEDINGS

Plaintiff is a permanent certificated teacher who has been employed by the District at one of its elementary schools for a number of years. On Monday, March 17, 2008, plaintiff arrived for work 17 minutes after school began and appeared to be under the influence of alcohol. She was placed on paid administrative leave. On May 1, plaintiff's attorney wrote to the District denying that his client had been under the influence of alcohol on March 17. He explained that plaintiff had been taking a medication for depression and the dosage had recently been increased substantially. The attorney also explained plaintiff had suffered a series of tragic events over the past year. He asked that plaintiff remain on paid administrative leave for the remainder of the school year and the District agreed.

On August 5, 2008, the District received a report that plaintiff had arrived at the parking lot of a school where she had previously taught and, when approached by an office supervisor, indicated she could not find her current school. The supervisor thought plaintiff was joking but plaintiff insisted she was not. Plaintiff appeared disoriented. The supervisor gave her directions.

On August 13, the District wrote plaintiff a letter requesting that she provide a fitness for duty certificate before the start of the 2008–2009 school year. On August 15, plaintiff's attorney responded that plaintiff would not provide such a certificate and that the District must instead proceed in accordance with section 44942.

On August 18, the principal at plaintiff's school called plaintiff to schedule a meeting for the next day. Plaintiff said she had to speak with her attorney first. Forty minutes later, plaintiff called the principal but, during the call, kept referring to the principal as "Ann," a recently retired teacher. Plaintiff agreed she and her union representative would meet with the District's director of human resources at 1:00 p.m. on August 22. However, at the scheduled time, the director and the union representative arrived, but not plaintiff. At approximately 2:05 p.m., plaintiff showed up at the office of the deputy superintendent of human resources and explained the union representative had told her the District's office was behind Lincoln High School and she kept driving around looking for it until she got lost. However, plaintiff

had in fact been to the District office numerous times in the past and the union representative denied telling plaintiff the office was behind Lincoln High School.

On August 26, Plaintiff met with the assistant superintendent and informed him she was meeting with her physician the following week.

On August 27, the District's attorney wrote plaintiff's attorney offering to explore options other than section 44942.

Plaintiff was examined by her physician on September 3, and the results of that examination were expected the week of September 15. However, on September 16, plaintiff learned her physician had referred her for additional testing.

On September 17, the District's attorney wrote plaintiff's attorney explaining the District had agreed to keep plaintiff on administrative leave pending medical exam results, but two weeks had passed without plaintiff's providing any such results. The attorney indicated that if she did not hear from plaintiff's attorney by September 19, she would recommend that plaintiff be placed on sick leave.

Plaintiff's attorney responded immediately, asserting: "This is in response to your letter dated September 17, 2008. I spoke to my client and she has been referred for additional testing. With that being the case, she is unable to make an informed decision on how she wishes to proceed. However, if your client is anxious to proceed, it must do so lawfully." Plaintiff's attorney went on to explain that the District must initiate section 44942 proceedings.

On September 18, the District notified plaintiff she was being placed on sick leave.

On October 9, plaintiff filed the present action seeking a writ of mandate to compel defendants to initiate section 44942 proceedings.

By October 31, the District concluded section 44942 was the only logical option in light of plaintiff's refusal to provide a fitness for duty certificate. Plaintiff was served with a statement of charges and, on November 6, was suspended. Plaintiff was given the right to appear at the next Board hearing on November 12, but she failed to do so. The Board voted to continue her suspension and proceed under section 44942.

Before the District initiated section 44942 proceedings, plaintiff was forced to use nearly two months of sick leave credits.

The trial court ultimately granted plaintiff's petition. The court concluded defendants violated section 44942 by not initiating proceedings before placing plaintiff on sick leave. The court issued a peremptory writ of mandate requiring defendants to pay plaintiff her full salary during the period she was forced to use sick leave credits and to reinstate any other accumulated benefits lost during that period. The court thereafter entered judgment accordingly.

DISCUSSION

I

*Fictitious Name*

Defendants contend plaintiff has no standing to sue under a fictitious name. Defendants argue state courts "have a process by which a plaintiff may protect his or her confidentiality, and that is by filing documents under seal" pursuant to California Rules of Court, rule 2.551.

■ The question here is not one of standing. Code of Civil Procedure section 367 states that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." Defendants contend this provision requires that a party sue in his or her own name. It does not. Notwithstanding its wording, this provision requires that an action be brought by the real party in interest. (*Redevelopment Agency of San Diego v. San Diego Gas & Electric Co.* (2003) 111 Cal.App.4th 912, 920 [4 Cal.Rptr.3d 317].) " 'A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law.' [Citation.] A complaint filed by someone other than the real party in interest is subject to general demurrer on the ground that it fails to state a cause of action. [Citation.] The purpose of this section is to protect a defendant from harassment by other claimants on the same demand. [Citation.]" (*Id.* at pp. 920–921.)

■ The question for purposes of standing is not the name used by the party suing but whether the party suing is the party possessing the right sued upon. In this matter, there is no question plaintiff is the party injured by virtue of defendants' actions and, therefore, she is the party possessing the right sued upon. Thus, the question is not whether plaintiff has standing to sue but whether she may do so using a fictitious name.

Plaintiff argues she "has the common law right to use any name she wants, without judicial approval," citing Code of Civil Procedure section 1279.5 and *Lee v. Superior Court* (1992) 9 Cal.App.4th 510 [11 Cal.Rptr.2d 763].

However, those authorities stand for the proposition that an individual has a common law right to *change* his or her name without the requirement of court approval. The question here is not whether plaintiff had the right to change her name to Jane Doe. She did not do so. Rather, she is attempting to use a pseudonym solely for the purpose of prosecuting this lawsuit.

Defendants argue: "California state courts do not permit plaintiffs to sue under fictitious names." However, defendants fail to cite a single state court decision in support. This is not surprising, since there have been countless published state court decisions where one or more of the parties have used fictitious names. For example, in *Doe v. Saenz* (2006) 140 Cal.App.4th 960 [45 Cal.Rptr.3d 126], three convicted felons were permitted to pursue legal actions under fictitious names challenging a decision by the State Department of Social Services to classify their offenses as nonexemptible, thereby precluding them from working in licensed community care facilities. In *Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987 [176 Cal.Rptr. 569], an individual convicted on a plea of maintaining a place for selling or using a narcotic was permitted to sue under a fictitious name on behalf of himself and all others similarly situated to determine whether they were entitled to the benefits and protections of marijuana reform legislation. In *Jane Doe 8015 v. Superior Court* (2007) 148 Cal.App.4th 489 [55 Cal.Rptr.3d 708], a patient of a clinical laboratory sued the laboratory after it was determined one of its phlebotomists had reused needles to draw blood and the plaintiff had acquired HIV as a result. In *Doe v. Bakersfield City School Dist.* (2006) 136 Cal.App.4th 556 [39 Cal.Rptr.3d 79], a former student who alleged sexual abuse by a former guidance counselor was permitted to pursue his action under a fictitious name.

In *Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436 [86 Cal.Rptr.3d 482], the Court of Appeal noted: "The judicial use of 'Doe plaintiffs' to protect legitimate privacy rights has gained wide currency, particularly given the rapidity and ubiquity of disclosures over the World Wide Web. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531 [67 Cal.Rptr.3d 330, 169 P.3d 559] [former Boy Scouts sued under pseudonyms based on allegations that city police officer sexually assaulted them while they were teenagers]; *Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1072 [95 Cal.Rptr.2d 864] [parents entitled to depose sperm donor with family history of kidney disease, but donor's name protected from disclosure to outsiders through an appropriate order 'which maintains the confidentiality of John Doe's identity . . . .'].)" (*Id.* at p. 1452, fn. 7.)

The United States Supreme Court has also implicitly endorsed the use of pseudonyms to protect a plaintiff's privacy. (See, e.g., *Roe v. Wade* (1973) 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705] [abortion]; *Doe v. Bolton* (1973)

410 U.S. 179 [35 L.Ed.2d 201, 93 S.Ct. 739] [abortion]; *Poe v. Ullman* (1961) 367 U.S. 497 [6 L.Ed.2d 989, 81 S.Ct. 1752] [birth control].)

In *Does I thru XXIII v. Advanced Textile Corp.* (9th Cir. 2000) 214 F.3d 1058, 1067, the Ninth Circuit Court of Appeals noted that federal courts "have permitted plaintiffs to use pseudonyms in three situations: (1) when identification creates a risk of retaliatory physical or mental harm [citations]; (2) when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature,' [citations]; and (3) when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution,' [citations]." (*Id.* at p. 1068.) The court went on to hold that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." (*Ibid.*)

In the present matter, defendants have taken a blanket approach in arguing that fictitious names can never be used by a plaintiff. They have therefore presented no argument as to why the use of a pseudonym by plaintiff, a tenured teacher accused of being mentally unfit to teach, is inappropriate in this case.

"An appellate brief 'should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.] [¶] . . . This court is not inclined to act as counsel for . . . appellant and furnish a legal argument as to how the trial court's rulings . . . constituted an abuse of discretion." (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164 [238 Cal.Rptr. 12].) And while defendants do argue in their reply brief that federal cases permitting use of a fictitious name are inapposite, they still provide no reasoned basis for treating the present matter differently under California law.

Because defendants fail to present any argument as to why plaintiff should not have been permitted to use a fictitious name under the circumstances of this case, we need not consider the issue further.

Defendants contend a petition for writ of mandate must nevertheless be verified. Implicitly, they argue a petition verified using a fictitious name, as here, is not in fact verified. We disagree. For purposes of this litigation, plaintiff is using the name Jane Doe. Thus, for purposes of this litigation, plaintiff's verification of the petition using the name Jane Doe is appropriate. Any other rule would render the ability to use a fictitious name in the litigation meaningless.

## II

*Section 44942*

■ Section 44942 provides a summary procedure for suspending or transferring to other duties a certificated school employee where there is reasonable cause to believe the employee "is suffering from mental illness of such a degree as to render him or her incompetent to perform his or her duties." (§ 44942, subd. (a).) Upon suspension or transfer under section 44942, the governing board of the school district must provide the employee with "a written statement of the facts giving rise to the board's belief, and an opportunity to appear before the board within 10 days to explain or refute the charges." (§ 44942, subd. (b).) If, after such appearance, the board decides to continue the suspension, or if the employee does not appear, the employee is given an opportunity to be examined by a panel of three psychiatrists or psychologists selected by the employee from a list provided by the board. (§ 44942, subd. (c).)

The panel's examination shall be at the school district's expense and must take place within 15 days of the suspension or transfer. (§ 44942, subd. (d).) A written report must be submitted by the panel to the board within 10 days and shall contain a finding as to "whether the employee is suffering from mental illness of such a degree as to render him or her incompetent to perform his or her duties." (*Ibid.*) During this process, "[t]he employee shall continue to receive his or her regular salary and all other benefits of employment . . . ." (§ 44942, subd. (c).)

■ If the panel concludes the employee should be permitted to return to his or her prior duties, the board must reinstate the employee to his or her position and expunge from the employee's personnel file all references to the suspension and the panel's determination. (§ 44942, subd. (e).) If, on the other hand, the panel determines the employee is suffering from a mental illness sufficient to render him or her incompetent to perform his or her duties, the board may place the employee on mandatory sick leave for a period not to exceed two years. (§ 44942, subd. (f).)

■ An employee placed on mandatory sick leave may immediately demand a hearing. If a hearing is demanded, the board must file a complaint in the superior court setting forth the charges against the employee, asking the court to determine if the charges are true and, if so, whether they constitute grounds for placing the employee on mandatory sick leave. (§ 44942, subd. (g).) If the court finds the employee was not incompetent to perform his or duties at the time of the suspension and should not have been placed on mandatory sick leave, the employee must be reinstated to the same

or a substantially similar position with full back salary, and any record of the suspension and the panel's report must be destroyed. (§ 44942, subd. (h).)

If the court instead finds the employee was properly placed on mandatory sick leave, or if the employee fails to demand a hearing, the employee may, between six months and two years after being placed on mandatory sick leave, request a new panel of psychiatrists or psychologists to review the original conclusion. (§ 44942, subd. (i).) If the new panel concludes the employee should be permitted to return to work, the board must "take immediate action to restore the employee to the position from which he or she was suspended or transferred or to a substantially similar position." (§ 44942, subd. (j).) If, instead, the new panel confirms the original conclusion, the employee shall be continued on mandatory sick leave. Once the employee's total period of absence exceeds two years, the board must either rescind its action and reinstate the employee or serve the employee with a notice of intention to dismiss. (§ 44942, subd. (i).)

In the present matter, it is undisputed the District refused to permit plaintiff to return to her regular duties at the commencement of the 2008–2009 school year. At the time, plaintiff was still on paid administrative leave. It is also undisputed plaintiff was taken off paid administrative leave and placed on mandatory sick leave in September 2008. Finally, it is undisputed the District commenced section 44942 proceedings in November. Thus, the question here is not if but when the District was required to initiate section 44942 proceedings.

Defendants contend section 44942 proceedings are discretionary and, hence, the District was not required to proceed in that manner any sooner than it did. Defendants further argue the District "promptly" initiated section 44942 proceedings once plaintiff made it clear she wanted to be suspended.

Plaintiff responds that, because the District claimed she was suffering from a mental illness, it was required to proceed in accordance with section 44942 rather than impose mandatory sick leave. In other words, plaintiff argues, where mental illness is at issue, section 44942 is mandatory.

Neither side has it quite right. First, defendants misstate the record in asserting that once plaintiff made it clear she wanted to be suspended, the District promptly initiated section 44942 proceedings. In response to the District's August 13 letter requesting that plaintiff provide a fitness for duty certificate, plaintiff's attorney indicated plaintiff would not do so and that the District must proceed in accordance with section 44942. The District failed to do so. On September 17, plaintiff's attorney informed the District that if it was anxious to proceed on plaintiff's case, it must initiate section 44942

proceedings. Again, the District failed to do so. Instead, the District notified plaintiff she was being placed on mandatory sick leave. The District did not commence section 44942 proceedings until November.

On the other hand, the District is correct that plaintiff was less than clear about her desire to proceed under section 44942. In his September 17 letter to the District, plaintiff's counsel indicated: "This is in response to your letter dated September 17, 2008. I spoke to my client and she has been referred for additional testing. With that being the case, she is unable to make an informed decision on how she wishes to proceed. . . ."

At any rate, it did not really matter how plaintiff wanted the District to proceed. Section 44942, subdivision (a), states: "Any certificated employee may be suspended or transferred to other duties by the governing board if the board has reasonable cause to believe that the employee is suffering from mental illness of such a degree as to render him or her incompetent to perform his or her duties."

█ "It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, *particularly when both terms are used in the same statute.* [Citations.]" (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610], italics added.) The Legislature used the word "shall" throughout much of section 44942 to express an intent that, once a governing board has decided to invoke section 44942, the procedures therein are mandatory. However, the decision to invoke section 44942 is itself discretionary.

But the fact a governing board has discretion to invoke section 44942 does not mean it is free to suspend or transfer a certificated employee for reasons of mental illness while at the same time ignoring section 44942.

Defendants insist the District must have total discretion on when to invoke section 44942, because any other interpretation would lead to absurd results. They argue: "At what point in time would a school district be required to immediately pursue proceedings under section 44942? When a teacher loses her keys? Forgets the principal's birthday? Makes a joke others don't find funny? Gets a bad evaluation? Is the subject of a parent complaint? At what point is a school district supposed to be sufficiently on notice that a teacher may be suffering from a mental illness?"

In the present matter, for example, defendants assert that after the District invoked section 44942, a panel of three psychiatrists concluded plaintiff's problems were due to years of alcohol abuse rather than a mental illness.

However, there is no evidence of that in the record. Defendants have requested that we take judicial notice of the decision of the panel in plaintiff's section 44942 proceeding. We deny the request. What the panel ultimately determined in plaintiff's case is not relevant to the issues presented in this appeal.

■ The answer to defendants' questions about when a school district is supposed to invoke section 44942 is actually quite simple. A school district is sufficiently on notice that a teacher may be suffering from a mental illness requiring section 44942 proceedings when the school district concludes it should suspend or transfer the teacher rather than allow him or her to continue teaching. In other words, while a governing board has discretion whether to suspend or transfer a certificated employee suspected of suffering from a mental illness, once it decides to do so, it must proceed under section 44942.

In the present matter, the District did not suspend or transfer plaintiff at the beginning of the 2008–2009 school year. Plaintiff was already on paid administrative leave. The District also did not suspend or transfer plaintiff in September, when her paid administrative leave was converted to mandatory sick leave. Nevertheless, as we shall explain, the District's actions amounted to a suspension within the meaning of section 44942.

In *Raven v. Oakland Unified School Dist.* (1989) 213 Cal.App.3d 1347 [262 Cal.Rptr. 354] (*Raven*), the plaintiff, a tenured teacher, suffered severe chest pains, nausea, and dizziness allegedly due to difficulties she was having with her new principal. For the next 16 months, the plaintiff took voluntary sick leave, thereby receiving various benefits under the school district's collective bargaining agreement. (*Id.* at p. 1353.) Later, the plaintiff sent the school district a letter indicating her doctor had permitted her to return to work. (*Ibid.*) However, the district denied the plaintiff's request for reinstatement. (*Id.* at p. 1354.)

The plaintiff filed a petition for a writ of mandate in the superior court, alleging the school district violated section 44942 by refusing to reinstate her without following the procedures therein. (*Raven, supra,* 213 Cal.App.3d at p. 1355.) The superior court granted the petition, ordered the school district to reinstate the plaintiff, and awarded her backpay. (*Id.* at p. 1355.)

The Court of Appeal affirmed. The appellate court first indicated that, under the parties' collective bargaining agreement, once an employee takes a leave of absence for 30 days or more, the employee bears the burden of presenting medical evidence of recovery. (*Raven, supra,* 213 Cal.App.3d at p. 1356.) However, the court went on to conclude that "once an employee has

presented medical evidence of recovery, the district bears the burden of proving she is mentally incompetent to teach, and must accord her the hearing procedures mandated by section 44942." (*Ibid.*)

Although the school district had not suspended the plaintiff, its failure to reinstate her had the same effect. The court explained: "The district may not deprive a tenured teacher of her employment rights indirectly when it could not do so directly. Otherwise, in similar cases the district could read out of the statute the procedural requirements where an employee seeks to return to work after taking voluntary sick leave. By refusing to take formal action to suspend or dismiss Raven, the district has deprived Raven of the procedural safeguards that section 44942 has specifically granted to a tenured teacher to ensure that allegations of mental competence are fully adjudicated by an impartial panel and subject to judicial review." (*Raven, supra*, 213 Cal.App.3d at pp. 1356–1357.)

Defendants contend the present matter is distinguishable from *Raven* in that, here, plaintiff failed to provide evidence that she had recovered from her mental illness, thereby triggering the District's obligation to reinstate her or proceed under section 44942. We agree *Raven* is distinguishable, but not for the reason urged by defendants. In *Raven*, the teacher was on indefinite medical leave at the time she requested to return to work. When the teacher presented evidence that she had recovered, the continuation of that medical leave was based on the school district's unilateral decision not to accept her medical evidence but instead to rely on its own medical evaluation of her condition. The court concluded the district could not do so but must instead proceed under section 44942.

In the present matter, plaintiff was not on indefinite administrative leave. As agreed by the District and plaintiff's attorney in May 2008, plaintiff was placed on paid administrative leave only until the end of the 2007–2008 school year. That leave was extended into the 2008–2009 school year only by virtue of the District's unilateral decision to require plaintiff to provide a fitness for duty certificate.

The District's decision was presumably based on both the March 2008 incident and the August 5 episode in the parking lot of plaintiff's prior school, where plaintiff appeared to be lost and disoriented. On August 13, the District sent plaintiff a letter stating: "The purpose of this letter is to notify you that pursuant to Article VII, Section 1(D) you must provide a Fitness for Duty Certificate. Attached is the CVT approved list of doctors. I am asking that you make every attempt to get this completed by August 20, 2008. If this is not possible, please notify me immediately so plans for a substitute teacher can be made." Attached to this letter was a list of 10 psychologists.

When the District demanded that plaintiff provide a fitness for duty certificate as a prerequisite to reporting for work at the beginning of the 2008–2009 school year, and the District presented plaintiff with a list of 10 approved doctors, all of whom were psychologists, the District in effect suspended plaintiff due to suspected mental illness. The District was therefore required to initiate section 44942 proceedings.

 Defendants argue that, in light of the information known to the District prior to the start of the 2008–2009 school year, "it would be entirely logical, and completely legally justified, for an employer to try to determine what is going on with the employee, and request documentation that the employee is well enough to work." Defendants cite federal guidelines under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) which, they argue, "authorize employers to request medical information in cases such as this." Suffice it to say this matter is not controlled by the Americans with Disabilities Act. California law provides its own procedure when it is suspected a certificated school employee may be suffering from a mental illness.

Defendants also argue that under state law, an employer may "inquire into a job applicant's ability to perform job-related functions" and "may request information regarding whether the employee would endanger his or her own health, or the health or safety of others." However, the provisions on which defendants rely, Government Code section 12940, subdivision (f)(2), and California Code of Regulations, title 2, section 7294.0, subdivision (b)(3), concern the permissible use of job-related medical inquiries for screening potential applicants and have no application to the circumstances presented here.

Defendants argue it is hard to believe most teachers would choose to subject themselves to examination by three psychologists or psychiatrists and have the results, including "the most intimate details about the person's mental fitness," reported to their employer's governing boards, as well as administrators, lawyers and judges. Moreover, defendants argue, "it is logistically complicated to identify three psychiatrists who are willing and able to perform such an exam, coordinate their schedules with others, and agree on exam procedures and a conclusion, and prepare a written report," not to mention the expense involved.

This may all be true. However, these arguments are more properly directed to the Legislature, not this court. It is the Legislature that enacted section 44942, with its detailed and extensive procedures that a school district must follow in order to get a certificated employee who suffers from a mental illness out of the classroom. We are bound by that legislation to the extent it

applies to the circumstances presented in a given case. As we have explained, the District's efforts in this case to keep plaintiff from returning to the classroom compelled it to proceed in accordance with section 44942.

We conclude the trial court did not err in finding the District was required to commence section 44942 proceedings before forcing plaintiff to use her accrued medical leave credits and, therefore, the court properly awarded plaintiff backpay and other lost benefits.

DISPOSITION

The judgment is affirmed. Plaintiff is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

Raye, Acting P. J., and Butz, J., concurred.

A petition for a rehearing was denied September 28, 2010, and on September 21, 2010, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied December 21, 2010, S187182. George, C. J., and Werdegar, J., did not participate therein.