Filed 4/2/13  AAA Blueprint v. Vasquez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AAA BLUEPRINT & DIGITAL REPROGRAPHICS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DENNIS ADRIAN VASQUEZ et al., <br><br> Defendants and Appellants. | G042693 <br><br> (Super. Ct. No. 30-2007-00100248) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed.  Respondent's motion for sanctions denied.

Sakamaki & Baumgartner and Francis Sakamaki for Defendants and Appellants.

Silverstein & Huston, Steven A. Silverstein, Mark W. Huston and Robert I. Cohen, for Plaintiff and Respondent.

## INTRODUCTION

Appellants Dennis Adrian Vazquez, Melissa Huerta, and All Blueprint, Inc. (All Blue), appeal from a judgment rendered against them and in favor of AAA Blueprint & Digital Reprographics, Inc. (AAA Blueprint), after a two-day bench trial. The central issue at trial was whether appellants had tried to hinder the collection of a judgment entered in 2006 for AAA Blueprint and against Alliance Reprographics, a rival company owned by Vazquez.

The trial court found that Vazquez and Huerta had indeed sought to frustrate AAA Blueprint's efforts to collect its 2006 judgment by transferring Alliance's assets to the newly formed All Blue, a competing printing shop. The court also found that all the defendants in this action – Vazquez, Huerta, All Blue, and Alliance – were alter egos of each other. The court issued an injunction preventing any of the defendants from disposing of assets pending the installation of a receiver.

We affirm the judgment. The issues appellants have raised in this court – lack of standing, lack of injury, and insufficient evidence of alter ego – are all without merit.

AAA Blueprint also moved for sanctions against Vazquez and his attorney, Francis Sakamaki, on the ground the appeal is frivolous. While we agree that appellants' briefs are dismal specimens of appellate advocacy, we must be careful not to equate poor lawyering with frivolousness. However ineptly, appellants raised issues not totally devoid of merit. We therefore deny the motion for sanctions.

## FACTS[1]

In 2006, AAA Blueprint was the plaintiff in a case against Alliance and one Jimmy Ibarra, an employee who had quit and gone to work for Alliance. Ibarra brought

___

[1] We recite the facts in the form most favorable to the judgment. (See *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 552.)

with him pricing information for AAA Blueprint's customers, allowing him to lure them to Alliance by undercutting his former employer's prices. AAA Blueprint sued Alliance and Ibarra for misappropriation of trade secrets and won a judgment of over $250,000 which included both compensatory and punitive damages. We affirmed the judgment in an unpublished opinion. (*AAA Blueprint & Digital Reprographics v. Ibarra* (Oct. 24, 2007, G037831) [nonpub. opn.].)

After the trial court's judgment, Vazquez offered Peter Bouchier, AAA Blueprint's principal, $100,000 to settle the case. If Bouchier did not accept the offer, Vazquez promised to close down Alliance and open another company across the street. AAA Blueprint would recover nothing on its judgment. Bouchier rejected the settlement offer.

Vazquez proceeded to do just as he had threatened. With the help of his sometime girlfriend Huerta, Vazquez opened up All Blue, blocks away from Alliance's place of business.[2] All of Alliance's printing equipment, most of it leased, went to All Blue. Alliance's employees – Huerta, her father, her brother, and eventually Vazquez himself – went to work for All Blue. Alliance's customers became All Blue's customers. All Blue used Vazquez's personal cars to make deliveries, without any discernible documentation for reimbursement. Money began flying about between people and between companies and people. For example, Vazquez lent Huerta $40,000 interest-free, most of which she used to start All Blue. Huerta in turn lent money to Vazquez, who was being paid only $1,500 per month to work at All Blue. He nevertheless repaid these loans, despite the fact that she had made no payment on his $40,000 loan to her. Vazquez lent All Blue $3,000 in July 2008. All Blue paid hefty American Express bills for which statements were not produced, creating the inference the company was paying for Huerta's and Vazquez's personal expenses. All Blue paid all the expenses for two

---

[2] Both businesses were located on West Commonwealth Street in Fullerton, just a few blocks apart.

3

BMWs for Vazquez (both cars registered in his name).  It also made payments on two cars belonging to Vazquez that All Blue was using to make deliveries.  Vazquez personally guaranteed a loan to All Blue.  Checks from Alliance customers to pay Alliance invoices were altered to make the payee All Blue or were simply deposited into All Blue's account without alteration.  And true to Vazquez's promise, AAA Blueprint collected nothing on its judgment against Alliance, now stripped of all its assets.

AAA Blueprint sued Vazquez, Huerta, Alliance, and All Blue for fraudulent transfer and alter ego.  After a two-day bench trial in July 2009, the court issued its ruling, finding that Vazquez and All Blue are alter egos of Alliance, and Vazquez and Huerta are alter egos of All Blue.  The court also found that Vazquez and Huerta conspired to transfer Alliance's assets to All Blue to avoid paying AAA Blueprint's judgment.  The court issued an injunction forbidding defendants from disposing of any assets pending the appointment of a receiver and issued writs of attachment against all defendants.  The court's alter ego findings made all defendants liable for the Alliance judgment, so the court did not award any additional damages.  It also did not award punitive damages, because of insufficient evidence of the defendants' wealth.

Vazquez, Huerta, and All Blue appealed from the judgment.  Their opening brief specified three grounds for the appeal.  First, at the time judgment was entered in 2006, AAA Blueprint was not separately incorporated, but was merely the fictitious business name for another corporation.  It did not exist as a separate legal entity.  It therefore had no standing to sue, and a judgment entered in favor of AAA Blueprint is void.  Second, the transfer of assets to All Blue did not injure Alliance, because the only evidence of the monetary value of Alliance property transferred to All Blue was paper and toner worth $600.  Finally, Vazquez is not the alter ego of Alliance or of All Blue.

4

## DISCUSSION

I.          **Appeal from the Judgment**

            **A.  AAA Blueprint's Standing to Sue**

Respondents' main issue is AAA Blueprint's lack of standing to sue.  They elicited testimony at trial from Bouchier that back in 2006, when the company got its judgment against Alliance, AAA Blueprint was not a corporation.  It did not become incorporated until after the fraudulent transfer action was filed in December 2007.  Before that time, including when the judgment against Alliance was entered, AAA Blueprint was the fictitious business name of another corporation, Graafikko, Inc.

As we understand appellants' argument on appeal, they are now asserting that the 2006 judgment was void – because it was rendered in AAA Blueprint's favor and not in favor Graafikko – and therefore AAA Blueprint was not a legitimate judgment creditor, because it was not the real party in interest in the 2006 case.  The transfer of Alliance's assets to All Blue was not a fraudulent transfer, because AAA Blueprint had no interest in them.

There are at least two problems with this argument.  First, appellants explicitly repudiated it at trial.  When appellants' counsel began questioning Bouchier about AAA Blueprint's corporate status, AAA's counsel objected on relevance grounds.  The court inquired as to the relevance of this line of questioning, and appellants' counsel stated, "We have an unclean hands argument, Your Honor, and the date of incorporation is relevant to that."  Based on that representation, the court allowed further questions on this subject.  After a few more questions, AAA's counsel objected again:  "Your Honor, relevance.  We have a judgment."  After still more questioning along these lines, AAA Blueprint's counsel protested yet again:  "Your Honor, you can't attack an underlying judgment. . . ."  "I'm not attacking the judgment," responded appellants' counsel.  During closing argument, appellants' counsel revisited this issue, but only in the context of

5

unclean hands. He argued that AAA Blueprint was just as bad as appellants in the disregarding-corporate-formalities department, because it had represented to the court in 2005 and 2006 that it was a corporation when it was not and because Bouchier did not properly distinguish between himself and AAA Blueprint. There is also some indication appellants' counsel persuaded AAA Blueprint's counsel not to introduce rebuttal evidence on the standing issue by representing that the testimony he had elicited went only to unclean hands. Appellants never brought up any standing problem with the underlying judgment during the fraudulent transfer trial.

In this court, appellants are doing what they specifically said they were not doing in the trial court: attacking the 2006 judgment. This brings us to the second problem with appellants' argument.

"A litigant may collaterally attack a final judgment for lack of personal or subject matter jurisdiction, or for granting relief that the court had no power to grant, but it may not collaterally attack a final judgment for nonjurisdictional errors. [Citations.] '"If a judgment, no matter how erroneous, is within the jurisdiction of the court, it can only be reviewed and corrected by one of the established methods of *direct* attack." [Citation.]' [Citation.]" (*Estate of Buck* (1994) 29 Cal.App.4th 1846, 1854.)

"'A judgment in favor of a person who is not a party to the action is obviously beyond the authority of the court,' and hence is void." (*Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 615, quoting 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 315, p. 927.) A void judgment is subject to collateral attack, and it cannot be the basis for any valid future proceedings. (*Id.* at p. 616.) In order to mount a collateral attack on the 2006 judgment, appellants must show that AAA Blueprint was not a party to the trade-secret litigation. They argue that it was not, because AAA Blueprint was only a fictitious business name.

Although we have not found any published case directly on point, there is authority for the proposition that using a fictitious name does not deprive a plaintiff of

6

standing or preclude it from being the real party in interest. In *Doe v. Lincoln Unified School Dist.* (2010) 188 Cal.App.4th 758 (*Doe*), a teacher who was thought to be mentally unfit for duty sued her school district for failing to use the procedure mandated by the Education Code in such cases. She used "Jane Doe" as the plaintiff's name on her complaint to protect her privacy. (*Id.* at p. 762.)

The district argued on appeal that the teacher had no standing to sue because Jane Doe was not the real party in interest. (*Doe, supra*, 188 Cal.App.4th at p. 765.) The court rejected this argument. Code of Civil Procedure section 367, cited by the district to support its argument, does not require that a party sue in his or her own name. It requires that an action be prosecuted by the real party in interest. "The question for purposes of standing is not the name used by the party suing but whether the party suing is the party possessing the right sued upon." (*Ibid.*; see also *Cabrera v. McMullen* (1988) 204 Cal.App.3d 1, 4 ["a person may sue or be sued in any name in which he or she is known and recognized"]; *Emery v. Kipp* (1908) 154 Cal. 83, 86, [at common law, "a person may adopt any name in which to prosecute business, and may sue or be sued in such a name."].)

In this case, the party possessing the right sued upon in the 2005 trade-secret case was the company whose trade secrets were misappropriated by Ibarra and unlawfully used by Alliance. Whether that party identified itself as Graafikko or as AAA Blueprint does not alter the facts that confer standing. "The purpose of [section 367] is to protect a defendant from harassment from other claimants on the same demand." (*Redevelopment Agency of San Diego v. San Diego Gas & Electric Co.* (2003) 111 Cal.App.4th 912, 921.) Under these circumstances, there was no danger of Graafikko's emerging to sue on the same right as AAA Blueprint.

The sole case on which appellants rely, *Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342 (*Pinkerton's*) rests on different facts and circumstances. In *Pinkerton's*, the problem centered on a *defendant* corporation and its fictitious business

name.  The plaintiffs dismissed the corporation after it appeared and then sought to proceed against the corporation's fictitious business name as if it were a separate entity. (*Id.* at pp. 1345-1346.)  Although counsel for the corporation tried repeatedly to explain that "Pinkerton Security and Investigation Services" was not a separate company but was a fictitious business name of Pinkerton's, Inc., which had been dismissed, the court took the default of Pinkerton Security and Investigation Services anyway. (*Id*. at pp. 1346-1347.)

The Court of Appeal reversed, reasoning that no default could be entered against Pinkerton's, Inc., the corporation, because it had appeared and been dismissed. (*Pinkerton's, supra,* 49 Cal.App.4th at p. 1347.)  Plaintiffs could not proceed against Pinkerton Security and Investigation Services after the corporation had been dismissed because there was no such separate legal entity.  "'The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner.' [Citations.]" (*Id.* at p. 1348.)

*Pinkerton's* does not support appellants' argument.  The issues here are the plaintiff's standing to sue and the identity of the real party in interest, issues totally absent in *Pinkerton's*.  The portion of *Pinkerton's* having any congruence with the case before us actually supports AAA Blueprint's position.  Because AAA Blueprint is a fictitious business name, it is a fiction that AAA Blueprint is a legal entity separate from Graafikko.  It is therefore immaterial whether the plaintiff was identified as AAA Blueprint or Graafikko, so long as Alliance and Ibarra were sued by only one plaintiff for trade secret misappropriation.[3]

---

[3]   We caution that we are here dealing only with standing under Code of Civil Procedure section 367, as a real party in interest.  We do not address those situations in which statutes or regulations impose additional requirements on a plaintiff, such as Business & Professions Code section 7031, which prevents unlicensed contractors from suing for compensation.  In those cases, it may well matter whether the plaintiff is only a fictitious business name.

8

The 2006 judgment is not subject to collateral attack, because it exhibits no jurisdictional error or grant of relief beyond the court's power. It was properly the basis for the fraudulent transfer action and for the subsequent judgment against appellants.

### B. AAA Blueprint's Injury

The trial court did not award additional damages to AAA Blueprint for fraudulent transfer. Instead, it issued an injunction and ordered the appointment of a receiver and the preparation of a writ of attachment for all the property of all the defendants. All of these remedies are expressly permitted under Civil Code section 3439.07, subdivision (a).

Appellants argue that AAA Blueprint was not damaged by the fraudulent transfer, because there was nothing for it to collect anyway, except for toner and paper worth $600. The printing equipment transferred from Alliance to All Blue was leased and did not belong to Alliance.

A fraudulent transfer plaintiff must present evidence of the value of the transferred assets to establish that the transfer has injured it. A transfer of assets in which the debtor has no equity, ones from which the creditor could not hope to satisfy its debt (perhaps because they are already encumbered with debt up to their value), is not a fraudulent transfer. Unless "the transfer puts beyond [the creditor's] reach property [it] otherwise would be able to subject to the payment of [its] debt," the creditor has not been injured. (See *Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 80.) Appellants assert that the only property transferred to All Blue – other than paper and toner – was leased equipment, which was not property belonging to Alliance but to the lessors.

Vazquez and Huerta did not transfer only equipment to All Blue; they transferred Alliance's entire business, including a stream of revenue from customers (discussed at trial) and anything else it owned. Because All Blue is Alliance's alter ego, its assets are Alliance's. All Blue is paying $900 a month to lease Vazquez's BMW; that

9

money could go to satisfy the judgment. All Blue had $50,000 on average in monthly sales. Some of that money can go to AAA Blueprint instead of being used to pay for Vazquez's car expenses that All Blue has picked up, along with money spent for entertainment, and for other discretionary outlays. All Blue paid Huerta substantial "dividends" in addition to her salary; those could go to AAA Blueprint instead of to her. Without the fraudulent transfer to All Blue, these assets would belong to Alliance and could be available to satisfy the 2006 judgment. That was the whole reason for the transfer. There was ample evidence at trial of unencumbered assets that could be used to pay off the judgment.

### C. Vazquez as Alter Ego of Alliance and All Blue

Vazquez alone argues that he is not the alter ego of either Alliance or All Blue. In essence, he argues insufficient evidence supports the court's alter ego findings.

"'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . .' [Citation.]" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053, superseded by statute on other grounds in *Riverwatch v. County of San Diego* (1999) 76 Cal.App.4th 1428, 1439.)

A finding of alter ego requires the presence of two conditions: (1) a unity of interest and ownership such that there is no separation between the corporation and the person or entity behind it; and (2) an inequitable result if the acts are treated as those of the corporation alone. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.) Courts have identified a myriad of factors to be used in determining whether to find one entity the alter ego of another, such as commingling of funds and other assets,

10

use of same offices and employees, use of one entity as a mere shell or conduit for the affairs of another, and disregard of corporate formalities. (*Id.* at pp. 538-539.)

Vazquez argues that he was not Alliance's alter ego because he made a good faith effort to pay Alliance's creditors after AAA Blueprint obtained its judgment in 2006. In addition, he insists his decision to change Alliance's business was not made in bad faith. Whether either of these arguments is true is debatable, but irrelevant. The focus instead is on whether Vazquez used Alliance in such a way as to erase the distinction between the corporation and him and whether it would be inequitable to maintain the distinction.

Substantial evidence supports the trial court's determination this erasure had occurred. Vazquez alone controlled Alliance and engineered the transfer of its assets, customers, and employees to All Blue, leaving Alliance – once a thriving business – an empty shell. In essence, he looted his own corporation to prevent AAA Blueprint from collecting its judgment. When it suited his purposes, he had no qualms about destroying Alliance; he could simply assemble all its assets and take them elsewhere, leading to the conclusion he dealt with Alliance's assets as if they were his own.

The inequity of allowing Vazquez to get away with the scheme is patent. He as much told Bouchier when the 2006 judgment came down that he would do what he could to stymie AAA Blueprint's efforts to collect. And so he did. Pretending that Alliance existed independently of Vazquez's whim would countenance fraud and injustice.

Vazquez also argues he is not All Blue's alter ego because he did not own any All Blue shares and was not a director or officer of the corporation. Vazquez overlooks the process by which he could be found to be All Blue's alter ego. The court found that Alliance is All Blue's alter ego, and Vazquez is Alliance's alter ego. Vazquez is All Blue's alter ego through Alliance.

11

There is certainly nothing inequitable about this finding.  All Blue is Alliance with a different name.  Alliance's equipment, customers, employees, vehicles all went to All Blue, a competitor, with minimal to no documentation and no discernible benefit to Alliance, other than preventing  AAA Blueprint from collecting on its judgment.  The trial court had substantial evidence upon which to base its alter ego findings with respect to Vazquez.

**II.  Motion for Sanctions**

AAA Blueprint has moved for sanctions on the ground this appeal is frivolous.  As our Supreme Court has stated, "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive – to harass the respondent or delay the effect of an adverse judgment – or when it indisputably has no merit – when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal. 3d 637, 650.)  "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions."  (*Ibid.*)  The power to punish attorneys for prosecuting frivolous appeals "should be used most sparingly to deter only the most egregious conduct."  (*Id.* at p. 651.)

We agree that appellants' briefs could be used in law school classes on appellate advocacy as examples of how not to do an appellate brief.  Violations of the rules of court and of accepted appellate practice occur on almost every page.  For example, appellants repeatedly cite to documents (i.e., defense trial exhibits) that are not in the record before us. (See Cal. Rules of Court, rule 8.204(a)(1)(C).)  Appellants do not give a comprehensive summary of the evidence presented at trial, as they are obliged to do when they identify insufficient evidence as an issue.  (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 749.)  The sole case on which they rely to support their lack of standing argument, *Pinkerton's*, does not support it; *Pinkerton's* has almost nothing to do with the issue.

Disregarding the rules, however, has certain consequences. Appellate courts can refuse to entertain arguments that come unsupported by legal authority or proper citations to the record. (*Doe v. Lincoln Unified School Dist., supra,* 188 Cal.App.4th at p. 767 [citation to authorities needed to support legal argument]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 [statement of facts must be supported by proper citation to record].) They can treat insufficient evidence arguments as waived in the absence of a complete and evenhanded statement of facts. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see also *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 713-714; *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 52-53.) With these penalties in effect, the most likely outcome for a plaintiff-appellant is an affirmance.

This appeal was not totally without merit, however. The main issue, whether a judgment rendered in favor of a corporation's fictitious business name is enforceable, does not appear to have been addressed in published opinions applying California law. There are plenty of cases upholding an individual's right to sue under a fictitious name (see *Doe v. Lincoln Unified School Dist., supra,* 188 Cal.App.4th at pp. 766-767), but the reasons for permitting this practice do not pellucidly apply to corporations.[4] While appellants could not provide us with a case on point supporting their position, AAA Blueprint was equally unable to provide us with a published case affirming a corporation's ability to sue under its fictitious business name.[5] Under the

---

[4]    The Ninth Circuit has identified three situations in which individuals have been permitted to sue under fictitious names in federal court: (1) to protect an individual from retaliation, whether physical or mental; (2) to safeguard privacy in sensitive or personal matters; and (3) to forestall criminal prosecution. (*Does I through XXIII v. Advanced Textile Corp.* (9th Cir. 2000) 214 F.3d 1058, 1067.)

[5]    We should also point out that, while appellants cited to documents not in the record, AAA Blueprint committed the worse sin of misrepresenting what the record said and did so often enough to create a pattern of misrepresentation. (See *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 845-846.) We could properly commend all of the briefs to our hypothetical appellate advocacy class as cautionary examples.

13

circumstances, we cannot conclude that the only purpose for filing this appeal was delay or that any reasonable attorney would regard it as totally and completely without merit.

## DISPOSITION

The judgment is affirmed.  The motion for sanctions is denied.  Respondent is to recover its costs on appeal.

 

 

 

_____

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.