Filed 11/4/22  Acosta v. Acosta CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JENNIFER ACOSTA,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ERIC ACOSTA,<br><br>      Defendant and Appellant. | A163808<br><br>(San Mateo County<br>Case No. 20-FAM-01243-A) |

Eric Acosta appeals from the trial court's order granting Jennifer Acosta a domestic violence restraining order (DVRO) and awarding her legal and physical custody of their two children. Because Eric[1] has not demonstrated that the court abused its discretion in issuing the DVRO, we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Eric and Jennifer married in 2004 and had two children, now teenagers. On July 17, 2020, Eric petitioned for dissolution based on irreconcilable differences in Case No. 20-FAM-01243.

On July 31, 2020, Jennifer filed a request for a DVRO against Eric on behalf of her and the children, as well as a request for child custody and

---

[1]     To avoid confusion, and meaning no disrespect, we shall use first names.

1

visitation orders. She claimed that on multiple occasions between 2018 and 2020 Eric had subjected her to verbal and physical abuse. She also claimed he had shown disregard for the physical safety and health of their children, and that he abused alcohol and used drugs.

On August 3, 2020, the court issued a temporary restraining order (TRO) barring Eric from harassing, threatening, contacting, or taking any action against Jennifer and the children; the TRO required he stay at least 100 yards away from them. The court also gave legal and physical custody of the children to Jennifer and denied Eric visitation.

On August 31, 2020, Eric responded to the request for a DVRO. Eric asserted Jennifer's contentions of abuse were false, misleading, and in retaliation to the dissolution petition he had filed. He further claimed that Jennifer was the one who abused alcohol and that she had been arrested on multiple occasions for domestic violence against him. He stated that he should be granted sole legal and physical custody of the children with only supervised visitation to Jennifer.

On September 15, 2020, the court continued the hearing on the DVRO petition and modified the TRO to allow Eric supervised visitation. After multiple additional continuances, the court held a hearing on Jennifer's petition. The hearing lasted six days, spanning from September 7, 2021, to September 21, 2021. The parties were represented by counsel. Jennifer testified to multiple instances between 2018 and 2020 in which Eric harmed her. These included incidents of physical abuse which left her bruised as well as instances of verbal abuse transmitted both orally and by text. Eric testified and called a friend of his to testify in support of his defense. Dozens of exhibits, including numerous photographs, were also admitted into evidence.

After the matter was submitted, the court observed that it had been presented with substantial testimony and evidence that satisfied Jennifer's burden under the preponderance of the evidence standard for a permanent restraining order. The court explicitly found Jennifer's testimony to be credible and noted that the photographs and video in evidence supported her testimony. The court further found that Eric's actions had significantly disturbed Jennifer's peace and would continue to do so absent the issuance of a permanent restraining order. The court granted a three-year restraining order that included the provisions set forth in the TRO.

Eric now appeals the DVRO. Following the filing of Eric's opening brief, Jennifer in propria persona emailed the court the following statement: "Because I do not believe that appellant has met their burden on appeal, I will not be filing Respondent's Briefs in these appeals."[2]

## DISCUSSION

### A. Applicable Law

The Domestic Violence Protection Act (DVPA) (Fam. Code, § 6200 et seq.[3]) allows the court to issue a protective order " ' "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse." ' " (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225 (*Davila*).) The DVPA defines " 'abuse' " (§ 6203) to include, among other things, intentionally or recklessly "caus[ing] or attempt[ing] to cause bodily injury" (§ 6203, subd. (a)(1)) to a spouse or

---

[2]    In Case No. A163766, Eric appeals another order in this proceeding which imposed a permanent injunction against him and his counsel from disseminating or distributing Jennifer's videotaped deposition online or on social media. That appeal was dismissed on November 1, 2022.

[3]    All further statutory references are to the Family Code unless otherwise stated.

former spouse (§ 6211, subd. (a)); placing such a person "in reasonable apprehension of imminent serious bodily injury" (§ 6203, subd. (a)(3)); or "molesting, attacking, striking, stalking, threatening . . . or disturbing the peace of the other party" (§ 6320). "Abuse is not limited to the actual infliction of physical injury or assault. (§ 6203, subd. (b).) "The DVPA requires a showing of past abuse by a preponderance of the evidence," for issuance of a DVRO. (*Davila,* at p. 226.)

We review rulings granting or denying DVROs for abuse of discretion. (*Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079). "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Because Jennifer did not file a respondent's brief, we decide the appeal based on the record, the opening brief, and any oral argument by appellant.[4] (Cal. Rules of Court, rule 8.220(a)(2).)

## B.    Statement of Decision

Eric argues the court erred by failing to issue a statement of decision. He contends that without a statement of decision the trial court erroneously "fail[ed] to explain its factual and legal reasoning for the decision, which was made from the bench and not in writing according to law." He further claims he "lacks his rightful context to challenge the court's reasoning in this Court of Appeal" without the statement of decision.

---

[4]    Since Eric did not request oral argument, argument on this appeal was waived.

Eric's counsel requested a statement of decision from the court "because this [was] a trial lasting longer than one day." Later, after the parties submitted the matter, the court acknowledged that defense counsel requested a statement of decision, and stated it was "intending to rule from the bench." The court indicated to Jennifer's counsel: "[Y]ou can prepare this statement of decision," a directive it repeated following its ruling. Jennifer's counsel agreed. Eric represents that Jennifer did not complete a statement of decision and never sought an extension or waiver, and the court never prepared a statement either. There is no statement of decision in the record.

Eric has cited no authority that obligates the court to issue a statement of decision following a hearing on a DVRO petition. Even had Eric identified proper authority obligating the court to issue a statement of decision, we would still find no error. "[A] trial court's error in failing to issue a requested statement of decision is not reversible per se, but is subject to harmless error review." (*F.P. Monier* (2017) 3 Cal.5th 1099, 1108.) " 'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice.' [Citation.] Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record. 'But our duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument. . . . [T]he appellant bears the duty of spelling out in his brief exactly how the error caused a "miscarriage of justice." ' " (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)

Eric states only he was "left . . . at a significant disadvantage" and that he lacks the "rightful context to challenge the court's reasoning" on appeal. He does not direct us to anything in the record to support a finding of prejudice. He makes no showing that the absence of a statement of decision

5

denied him a fair hearing, nor does he identify any arguments he was unable to make on appeal, despite the availability of the full reporter's transcript of all six days of the DVRO hearing, in which the court ruled on objections and issued its findings. Since Eric has not shown prejudice by the court's failure to issue a statement of decision, there is no basis for reversal based upon the absence of statement of decision.

### C. Evidentiary Rulings

The trial court has broad authority and a statutory duty to control trial proceedings, including the introduction and exclusion of evidence. (Evid. Code, §§ 320, 352.) This discretion includes "the power to rule on the admissibility of evidence, exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact." (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291.)

Eric contends the trial court's exclusion of four of his proposed exhibits prejudiced him and caused him substantial harm. We consider the court's evidentiary rulings for abuse of discretion. (*Wicks v. Antelope Valley Healthcare Dist.* (2020) 49 Cal.App.5th 866, 875.) "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice . . ." (Evid. Code, § 354.)

The first item Eric contends was improperly excluded was a letter his children purportedly wrote and gave him at their only supervised visit. According to Eric, in the letter the children "seem[] like they are blaming [him] for everything." They ask him about lying to their mother and tell him

6

they cannot see him. The letter, in Eric's view, includes "unusually mature phrases" and reflected greater knowledge about his problems with Jennifer than the children should have known. At the hearing, Eric testified the letter was hurtful to him and made him cry. The court sustained a hearsay objection to the letter.

The second item was a screenshot of text messages purportedly between his daughter and one of her friends. In response to her friend's invitation to go out, the daughter responded, " 'No because your dad is hanging out with my dad even after he knows what's going on.' " In the text that followed, she wrote, " '[S]orry, that message was not sent by me . . . I don't use this contact anymore lol.' " The court sustained a hearsay objection to this exhibit, as well. Eric says he offered the exhibit to show Jennifer was using the children's devices and impersonating them, which was relevant to her credibility and bias.

The third excluded item was a screenshot of an Instagram message from an anonymous person who knew about Eric and Jennifer's problems and claimed Eric was improperly and cruelly withholding money from his family. Eric testified that the message felt like a threat and made him cry. Eric says he offered the exhibit to show Jennifer was "trashing [Eric] in the community," which was relevant to her credibility and bias. The court sustained a hearsay objection to the exhibit.

The fourth and final item was a letter written by the parties' reconnection therapist. The court also sustained a hearsay objection to this exhibit. Eric contends exclusion of the evidence was "highly detrimental" to his case, since the evidence was "relevant, not privileged, and likely to support [him]."

Even assuming without deciding that the court erred in excluding these four exhibits, such errors would not be grounds for reversal as "an erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Twenty-Nine Palm Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449.)

Eric explains the reasons he offered the various exhibits, contends they showed Jennifer "inappropriately revealed case details and her own negative feelings to the children" in a manipulative effort to get the children on her side, and notes the exclusion of the fourth one was "highly detrimental." None of these assertions demonstrate prejudice or persuade us that the admission of such exhibits would have changed the DVRO. Eric does not argue and makes no showing that it is reasonably probable a result more favorable to him would have been reached absent the errors. Accordingly, there was no miscarriage of justice based on the exclusion of the evidence.

## D. Trial Court's Credibility Determination

Eric argues the trial court's "most egregious error" was finding Jennifer to be a credible witness notwithstanding video evidence that contradicted her testimony. Referring to two incidents of abuse from 2018 and 2020 about which Jennifer testified, Eric claims "[n]o reasonable trial court would have declared Jennifer to be credible on these incidents" based on the video evidence. In his view, Jennifer presented "fabricated and exaggerated" testimony about the incidents, and his own testimony more closely aligned with the video evidence. He asserts that the court's finding that she was credible detrimentally affected his case.

To the extent he asks this court to reevaluate Jennifer's credibility, Eric's argument reflects a lack of understanding of our role as the Court of

8

Appeal. "Credibility determinations are the province of the trial court." (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 364.) "Appellate courts 'do not reweigh evidence or reassess the credibility of witnesses. [Citations.]' Put another way, '[t]he Court of Appeal is not a second trier of fact.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) The trial court found Jennifer to be credible, and it is not our role to reevaluate that credibility finding.

Moreover, " '[t]o the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) This means "[w]e draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence." (*J.M. & G.H.* (2014) 228 Cal.App.4th 925, 935.) If substantial evidence exists, it does not matter if we would believe other evidence, draw other reasonable inferences, or reach a different conclusion. (*In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 33.) "All conflicts in the evidence are drawn in favor of the judgment," and "[w]hen supported by substantial evidence, we must defer to the trial court's findings," including findings regarding witness credibility. (*Nike v. Foreman* (2006) 144 Cal.App.4th 344, 364–365.) 'The testimony of one witness, even that of a party, may constitute substantial evidence.' " (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119.)

Jennifer's testimony regarding the incidents from 2018 and 2020 provided substantial evidence in support of the court's findings, and we draw any conflicts in the video evidence in favor of the court's order. Further, even if we were to disregard those two incidents, Jennifer testified regarding multiple additional instances of physical and verbal abuse about which Eric

9

makes no credibility argument and which, standing alone, provided substantial evidence in support of the DVRO.

### E.    Terms of the DVRO

Lastly, Eric contends the DVRO's terms were "oppressive and unjustified," "grossly unfair, inequitable, and prejudicial," "too long in duration," and an abuse of discretion.  He explains that practically speaking, the DVRO "will ensure that [he] will not see his children until they turn 18 [years old], if ever."  Eric adds that the order should have allowed him visitation without making him go through reconnection therapy, which was a "grossly unfair burden on him."

These final arguments are also deficient.  " 'An appellate brief "should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, [we] may treat it as waived, and pass it without consideration."  [Citation.]  [¶] . . .  This court is not inclined to act as counsel for . . . appellant and furnish a legal argument as to how the trial court's rulings . . . constituted an abuse of discretion.' " (*Doe v. Lincoln Unified School Dist.* (2010) 188 Cal.App.4th 758, 767.)  In tendering these largely conclusory arguments, Eric has not referenced any relevant portions of the record, cited any authority, or provided any reasoned analysis.  Accordingly, Eric has forfeited his challenge to the court's exercise of discretion, and we treat this argument as waived.

### DISPOSITION

The order is affirmed.  Because no respondent's brief was filed, no costs are awarded to either party.

_____

Petrou, J.

WE CONCUR:

_____

Tucher, P.J.

_____

Rodríguez, J.

A163808/*Acosta v. Acosta*

11